# UNITED STATES *v.* CRONIC

No. 82–660.   Argued January 10, 1984—Decided May 14, 1984

STEVENS, J., delivered the opinion of the Court, in which BURGER, C. J., and BRENNAN, WHITE, BLACKMUN, POWELL, REHNQUIST, and O'CONNOR, JJ., joined. MARSHALL, J., concurred in the judgment.

*Edwin S. Kneedler* argued the cause for the United States. With him on the briefs were *Solicitor General Lee, Assistant Attorney General Trott, Deputy Solicitor General Frey,* and *John Fichter De Pue.*

*Steven Duke* by appointment of the Court, 462 U. S. 1128, argued the cause and filed a brief for respondent.*

JUSTICE STEVENS delivered the opinion of the Court.

Respondent and two associates were indicted on mail fraud charges involving the transfer of over $9,400,000 in checks between banks in Tampa, Fla., and Norman, Okla., during a 4-month period in 1975. Shortly before the scheduled trial date, respondent's retained counsel withdrew. The court appointed a young lawyer with a real estate practice to represent respondent, but allowed him only 25 days for pretrial preparation, even though it had taken the Government over four and one-half years to investigate the case and it had reviewed thousands of documents during that investigation. The two codefendants agreed to testify for the Government;

---

*Briefs of *amici curiae* urging affirmance were filed for the National Association of Criminal Defense Lawyers et al. by *John J. Cleary;* and for the National Legal Aid and Defender Association et al. by *Richard J. Wilson, Charles S. Sims,* and *Burt Neuborne.*

respondent was convicted on 11 of the 13 counts in the indictment and received a 25-year sentence.

The Court of Appeals reversed the conviction because it concluded that respondent did not "have the Assistance of Counsel for his defence" that is guaranteed by the Sixth Amendment to the Constitution.[1]   This conclusion was not supported by a determination that respondent's trial counsel had made any specified errors, that his actual performance had prejudiced the defense, or that he failed to exercise "the skill, judgment, and diligence of a reasonably competent defense attorney"; instead the conclusion rested on the premise that no such showing is necessary "when circumstances hamper a given lawyer's preparation of a defendant's case."[2] The question presented by the Government's petition for certiorari is whether the Court of Appeals has correctly interpreted the Sixth Amendment.

## I

The indictment alleged a "check kiting" scheme.[3]   At the direction of respondent, his codefendant Cummings opened a bank account in the name of Skyproof Manufacturing, Inc. (Skyproof), at a bank in Tampa, Fla., and codefendant Merritt opened two accounts, one in his own name and one in the name of Skyproof, at banks in Norman, Okla.[4]   Knowing that there were insufficient funds in either account, the defendants allegedly drew a series of checks and wire transfers on the Tampa account aggregating $4,841,073.95, all of which were deposited in Skyproof's Norman bank account during the period between June 23, 1975, and October 16, 1975;

---

[1] The Sixth Amendment provides, in pertinent part:

"In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence."

[2] 675 F. 2d 1126, 1128 (CA10 1982).

[3] See *Williams* v. *United States*, 458 U. S. 279, 280–282, and n. 1 (1982).

[4] Skyproof, according to the indictment, was largely a facade and pretense to permit the withdrawal of large sums of money from these banks.

during approximately the same period they drew checks on Skyproof's Norman account for deposits in Tampa aggregating $4,600,881.39. The process of clearing the checks involved the use of the mails. By "kiting" insufficient funds checks between the banks in those two cities, defendants allegedly created false or inflated balances in the accounts. After outlining the overall scheme, Count I of the indictment alleged the mailing of two checks each for less than $1,000 early in May. Each of the additional 12 counts realleged the allegations in Count I except its reference to the two specific checks, and then added an allegation identifying other checks issued and mailed at later dates.

At trial the Government proved that Skyproof's checks were issued and deposited at the times and places, and in the amounts, described in the indictment. Having made plea bargains with defendants Cummings and Merritt, who had actually handled the issuance and delivery of the relevant written instruments, the Government proved through their testimony that respondent had conceived and directed the entire scheme, and that he had deliberately concealed his connection with Skyproof because of prior financial and tax problems.

After the District Court ruled that a prior conviction could be used to impeach his testimony, respondent decided not to testify. Counsel put on no defense. By cross-examination of Government witnesses, however, he established that Skyproof was not merely a sham, but actually was an operating company with a significant cash flow, though its revenues were not sufficient to justify as large a "float" as the record disclosed. Cross-examination also established the absence of written evidence that respondent had any control over Skyproof, or personally participated in the withdrawals or deposits.[5]

---

[5] A good deal of evidence concerned the efforts of the Norman bank to recoup its losses, and also the efforts of respondent to make restitution. The bank took over a local bottling company in Texas that had been acquired by Skyproof while the scheme was in operation, and respondent

The 4-day jury trial ended on July 17, 1980, and respondent was sentenced on August 28, 1980. His counsel perfected a timely appeal, which was docketed on September 11, 1980. Two months later respondent filed a motion to substitute a new attorney in the Court of Appeals, and also filed a motion in the District Court seeking to vacate his conviction on the ground that he had newly discovered evidence of perjury by officers of the Norman bank, and that the Government knew or should have known of that perjury. In that motion he also challenged the competence of his trial counsel.[6] The District Court refused to entertain the motion while the appeal was pending. The Court of Appeals denied the motion to substitute the attorney designated by respondent, but did appoint still another attorney to handle the appeal. Later it allowed respondent's motion to supplement the record with material critical of trial counsel's performance.

The Court of Appeals reversed the conviction because it inferred that respondent's constitutional right to the effective assistance of counsel had been violated. That inference was based on its use of five criteria: "'(1) [T]he time afforded for investigation and preparation; (2) the experience of counsel; (3) the gravity of the charge; (4) the complexity of possible defenses; and (5) the accessibility of witnesses to counsel.'" 675 F. 2d 1126, 1129 (CA10 1982) (quoting *United States* v. *Golub*, 638 F. 2d 185, 189 (CA10 1980)). Under the test employed by the Court of Appeals, reversal is required even if

---

apparently offered to make the bank whole with funds to be supplied by a rich aunt. That evidence did not provide respondent with much of a defense to the mail fraud charges, but was considered relevant to sentencing by the District Court.

[6] During trial, in response to questions from the bench, respondent expressed his satisfaction with counsel's performance. However, in his motion for new trial, respondent attacked counsel's performance and explained his prior praise of counsel through an affidavit of a psychologist who indicated that he had advised respondent to praise trial counsel in order to ameliorate the lawyer's apparent lack of self-confidence.

the lawyer's actual performance was flawless. By utilizing this inferential approach, the Court of Appeals erred.

## II

An accused's right to be represented by counsel is a fundamental component of our criminal justice system. Lawyers in criminal cases "are necessities, not luxuries."[7] Their presence is essential because they are the means through which the other rights of the person on trial are secured. Without counsel, the right to a trial itself would be "of little avail,"[8] as

---

[7] "That government hires lawyers to prosecute and defendants who have the money hire lawyers to defend are the strongest indications of the widespread belief that lawyers in criminal courts are necessities, not luxuries. The right of one charged with crime to counsel may not be deemed fundamental and essential to fair trials in some countries, but it is in ours. From the very beginning, our state and national constitutions and laws have laid great emphasis on procedural and substantive safeguards designed to assure fair trials before impartial tribunals in which every defendant stands equal before the law." *Gideon* v. *Wainwright*, 372 U. S. 335, 344 (1963).

[8] Time has not eroded the force of Justice Sutherland's opinion for the Court in *Powell* v. *Alabama*, 287 U. S. 45 (1932):

"The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence. If that be true of men of intelligence, how much more true is it of the ignorant and illiterate, or those of feeble intellect. If in any case, civil or criminal, a state or federal court were arbitrarily to refuse to hear a party by counsel, employed by and appearing for him, it reasonably may not be doubted that such a refusal would be a denial of a hearing, and, therefore, of due process in the constitutional sense." *Id.*, at 68–69.

this Court has recognized repeatedly.[9]  "Of all the rights that an accused person has, the right to be represented by counsel is by far the most pervasive for it affects his ability to assert any other rights he may have."[10]

The special value of the right to the assistance of counsel explains why "[i]t has long been recognized that the right to counsel is the right to the effective assistance of counsel." *McMann* v. *Richardson*, 397 U. S. 759, 771, n. 14 (1970). The text of the Sixth Amendment itself suggests as much. The Amendment requires not merely the provision of counsel to the accused, but "Assistance," which is to be "for his defence."  Thus, "the core purpose of the counsel guarantee was to assure 'Assistance' at trial, when the accused was confronted with both the intricacies of the law and the advocacy of the public prosecutor." *United States* v. *Ash*, 413 U. S. 300, 309 (1973).  If no actual "Assistance" "for" the accused's "defence" is provided, then the constitutional guarantee has been violated.[11]  To hold otherwise

"could convert the appointment of counsel into a sham and nothing more than a formal compliance with the Constitution's requirement that an accused be given the assistance of counsel.  The Constitution's guarantee of

---

[9] See *United States* v. *Ash*, 413 U. S. 300, 307–308 (1973); *Argersinger* v. *Hamlin*, 407 U. S. 25, 31–32 (1972); *Gideon* v. *Wainwright*, 372 U. S., at 343–345; *Johnson* v. *Zerbst*, 304 U. S. 458, 462–463 (1938); *Powell* v. *Alabama*, 287 U. S., at 68–69.

[10] Schaefer, Federalism and State Criminal Procedure, 70 Harv. L. Rev. 1, 8 (1956).

[11] "The Sixth Amendment, however, guarantees more than the appointment of competent counsel.  By its terms, one has a right to 'Assistance of Counsel [for] his defence.'  Assistance begins with the appointment of counsel, it does not end there.  In some cases the performance of counsel may be so inadequate that, in effect, no assistance of counsel is provided. Clearly, in such cases, the defendant's Sixth Amendment right to 'have Assistance of Counsel' is denied." *United States* v. *Decoster*, 199 U. S. App. D. C. 359, 382, 624 F. 2d 196, 219 (MacKinnon, J., concurring), cert. denied, 444 U. S. 944 (1979).

assistance of counsel cannot be satisfied by mere formal appointment." *Avery* v. *Alabama,* 308 U. S. 444, 446 (1940) (footnote omitted).

Thus, in *McMann* the Court indicated that the accused is entitled to "a reasonably competent attorney," 397 U. S., at 770, whose advice is "within the range of competence demanded of attorneys in criminal cases." *Id.,* at 771.[12] In *Cuyler* v. *Sullivan,* 446 U. S. 335 (1980), we held that the Constitution guarantees an accused "adequate legal assistance." *Id.,* at 344. And in *Engle* v. *Isaac,* 456 U. S. 107 (1982), the Court referred to the criminal defendant's constitutional guarantee of "a fair trial and a competent attorney." *Id.,* at 134.

The substance of the Constitution's guarantee of the effective assistance of counsel is illuminated by reference to its underlying purpose. "[T]ruth," Lord Eldon said, "is best discovered by powerful statements on both sides of the question."[13] This dictum describes the unique strength of our system of criminal justice. "The very premise of our adversary system of criminal justice is that partisan advocacy on both sides of a case will best promote the ultimate objective that the guilty be convicted and the innocent go free." *Herring* v. *New York,* 422 U. S. 853, 862 (1975).[14] It is that "very premise" that underlies and gives meaning to the Sixth

---

[12] See also *Wainwright* v. *Sykes,* 433 U. S. 72, 99 (1977) (WHITE, J., concurring in judgment); *id.,* at 117–118 (BRENNAN, J., dissenting); *Tollett* v. *Henderson,* 411 U. S. 258, 266–268 (1973); *Parker* v. *North Carolina,* 397 U. S. 790, 797–798 (1970).

[13] Quoted in Kaufman, Does the Judge Have a Right to Qualified Counsel?, 61 A. B. A. J. 569, 569 (1975).

[14] See also *Polk County* v. *Dodson,* 454 U. S. 312, 318 (1981) ("The system assumes that adversarial testing will ultimately advance the public interest in truth and fairness"); *Gardner* v. *Florida,* 430 U. S. 349, 360 (1977) (plurality opinion) ("Our belief that debate between adversaries is often essential to the truth-seeking function of trials requires us also to recognize the importance of giving counsel an opportunity to comment on facts which may influence the sentencing decision in capital cases").

Amendment.[15]   It "is meant to assure fairness in the adversary criminal process."   *United States* v. *Morrison*, 449 U. S. 361, 364 (1981).   Unless the accused receives the effective assistance of counsel, "a serious risk of injustice infects the trial itself."   *Cuyler* v. *Sullivan*, 446 U. S., at 343.[16]

Thus, the adversarial process protected by the Sixth Amendment requires that the accused have "counsel acting in the role of an advocate."   *Anders* v. *California*, 386 U. S. 738, 743 (1967).[17]   The right to the effective assistance of counsel is thus the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing.   When a true adversarial criminal trial has been conducted—even if defense counsel may have made demonstrable errors[18]—the kind of testing envisioned by the Sixth Amendment has occurred.[19]   But if the process loses

---

[15] "More specifically, the right to the assistance of counsel has been understood to mean that there can be no restrictions upon the function of counsel in defending a criminal prosecution in accord with the traditions of the adversary factfinding process that has been constitutionalized in the Sixth and Fourteenth Amendments."   422 U. S., at 857.

[16] "Whether a man is innocent cannot be determined from a trial in which, as here, denial of counsel has made it impossible to conclude, with any satisfactory degree of certainty, that the defendant's case was adequately presented."   *Betts* v. *Brady*, 316 U. S. 455, 476 (1942) (Black, J., dissenting).

[17] See also *Jones* v. *Barnes*, 463 U. S. 745, 758 (1983) (BRENNAN, J., dissenting) ("To satisfy the Constitution, counsel must function as an advocate for the defendant, as opposed to a friend of the court"); *Ferri* v. *Ackerman*, 444 U. S. 193, 204 (1979) ("Indeed, an indispensable element of the effective performance of [defense counsel's] responsibilities is the ability to act independently of the Government and to oppose it in adversary litigation").

[18] See *Engle* v. *Isaac*, 456 U. S. 107, 133–134 (1982); *United States* v. *Agurs*, 427 U. S. 97, 102, n. 5 (1976); *Tollett* v. *Henderson*, 411 U. S., at 267; *Parker* v. *North Carolina*, 397 U. S., at 797–798; *McMann* v. *Richardson*, 397 U. S. 759, 770–771 (1970); *Brady* v. *United States*, 397 U. S. 742, 756–757 (1970).

[19] Of course, the Sixth Amendment does not require that counsel do what is impossible or unethical.   If there is no bona fide defense to the charge, counsel cannot create one and may disserve the interests of his client by

its character as a confrontation between adversaries, the constitutional guarantee is violated.[20] As Judge Wyzanski has written: "While a criminal trial is not a game in which the participants are expected to enter the ring with a near match in skills, neither is it a sacrifice of unarmed prisoners to gladiators." *United States ex rel. Williams* v. *Twomey*, 510 F. 2d 634, 640 (CA7), cert. denied *sub nom. Sielaff* v. *Williams*, 423 U. S. 876 (1975).[21]

## III

While the Court of Appeals purported to apply a standard of reasonable competence, it did not indicate that there had been an actual breakdown of the adversarial process during

---

attempting a useless charade. See *Nickols* v. *Gagnon*, 454 F. 2d 467, 472 (CA7 1971), cert. denied, 408 U. S. 925 (1972). At the same time, even when no theory of defense is available, if the decision to stand trial has been made, counsel must hold the prosecution to its heavy burden of proof beyond reasonable doubt. And, of course, even when there is a bona fide defense, counsel may still advise his client to plead guilty if that advice falls within the range of reasonable competence under the circumstances. See *Tollett* v. *Henderson*, 411 U. S., at 266–268; *Parker* v. *North Carolina*, 397 U. S., at 797–798; *McMann*, 397 U. S., at 770–771. See generally *Bordenkircher* v. *Hayes*, 434 U. S. 357, 363–365 (1978); *North Carolina* v. *Alford*, 400 U. S. 25, 37–38 (1970); *Brady* v. *United States*, 397 U. S., at 750–752.

[20] The Court of Appeals focused on counsel's overall representation of respondent, as opposed to any specific error or omission counsel may have made. Of course, the type of breakdown in the adversarial process that implicates the Sixth Amendment is not limited to counsel's performance as a whole—specific errors and omissions may be the focus of a claim of ineffective assistance as well. See *Strickland* v. *Washington, post*, at 693–696. Since this type of claim was not passed upon by the Court of Appeals, we do not consider it here.

[21] Thus, the appropriate inquiry focuses on the adversarial process, not on the accused's relationship with his lawyer as such. If counsel is a reasonably effective advocate, he meets constitutional standards irrespective of his client's evaluation of his performance. See *Jones* v. *Barnes*, 463 U. S. 745 (1983); *Morris* v. *Slappy*, 461 U. S. 1 (1983). It is for this reason that we attach no weight to either respondent's expression of satisfaction with counsel's performance at the time of his trial, or to his later expression of dissatisfaction. See n. 6, *supra*.

the trial of this case. Instead it concluded that the circumstances surrounding the representation of respondent mandated an inference that counsel was unable to discharge his duties.

In our evaluation of that conclusion, we begin by recognizing that the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial. Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated. See *United States* v. *Valenzuela-Bernal*, 458 U. S. 858, 867–869 (1982); *United States* v. *Morrison*, 449 U. S., at 364–365; *Weatherford* v. *Bursey*, 429 U. S. 545 (1977).[22] Moreover, because we presume that the lawyer is competent to provide the guiding hand that the defendant needs, see *Michel* v. *Louisiana*, 350 U. S. 91, 100–101 (1955), the burden rests on the accused to demonstrate a constitutional violation.[23] There are, however, circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified.[24]

---

[22] Cf. *United States* v. *Agurs*, 427 U. S., at 112 (footnote omitted) ("The proper standard of materiality [of a prosecutor's failure to disclose exculpatory evidence] must reflect our overriding concern with the justice of the finding of guilt"). Thus, we do not view counsel's performance in the abstract, but rather the impact of counsel's performance upon "what, after all, is [the accused's], not counsel's trial." *McKaskle* v. *Wiggins*, 465 U. S. 168, 174 (1984).

[23] "Whenever we are asked to consider a charge that counsel has failed to discharge his professional responsibilities, we start with a presumption that he was conscious of his duties to his clients and that he sought conscientiously to discharge those duties. The burden of demonstrating the contrary is on his former clients." *Matthews* v. *United States*, 518 F. 2d 1245, 1246 (CA7 1975).

[24] See, *e. g.*, *Flanagan* v. *United States*, 465 U. S. 259, 267–268 (1984); *Estelle* v. *Williams*, 425 U. S. 501, 504 (1976); *Murphy* v. *Florida*, 421 U. S. 794 (1975); *Bruton* v. *United States*, 391 U. S. 123, 136–137 (1968); *Sheppard* v. *Maxwell*, 384 U. S. 333, 351–352 (1966); *Jackson* v. *Denno*, 378 U. S. 368, 389–391 (1964); *Payne* v. *Arkansas*, 356 U. S. 560, 567–568 (1958); *In re Murchison*, 349 U. S. 133, 136 (1955).

Most obvious, of course, is the complete denial of counsel. The presumption that counsel's assistance is essential requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage of his trial.[25]  Similarly, if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable.  No specific showing of prejudice was required in *Davis* v. *Alaska*, 415 U. S. 308 (1974), because the petitioner had been "denied the right of effective cross-examination" which " 'would be constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it.' "  *Id.*, at 318 (citing *Smith* v. *Illinois*, 390 U. S. 129, 131 (1968), and *Brookhart* v. *Janis*, 384 U. S. 1, 3 (1966)).[26]

Circumstances of that magnitude may be present on some occasions when although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a

---

[25] The Court has uniformly found constitutional error without any showing of prejudice when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding.  See, *e. g.*, *Geders* v. *United States*, 425 U. S. 80 (1976); *Herring* v. *New York*, 422 U. S. 853 (1975); *Brooks* v. *Tennessee*, 406 U. S. 605, 612–613 (1972); *Hamilton* v. *Alabama*, 368 U. S. 52, 55 (1961); *White* v. *Maryland*, 373 U. S. 59, 60 (1963) *(per curiam); Ferguson* v. *Georgia*, 365 U. S. 570 (1961); *Williams* v. *Kaiser*, 323 U. S. 471, 475–476 (1945).

[26] Apart from circumstances of that magnitude, however, there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt.  See *Strickland* v. *Washington, post*, at 693–696; see generally *Davis* v. *Alabama*, 596 F. 2d 1214, 1221–1223 (CA5 1979), vacated as moot, 446 U. S. 903 (1980); *Cooper* v. *Fitzharris*, 586 F. 2d 1325, 1332–1333 (CA9 1978) (en banc); *McQueen* v. *Swenson*, 498 F. 2d 207, 219–220 (CA8 1974); *United States ex rel. Green* v. *Rundle*, 434 F. 2d 1112, 1115 (CA3 1970); Bines, Remedying Ineffective Representation in Criminal Cases: Departures from Habeas Corpus, 59 Va. L. Rev. 927 (1973); Note, Ineffective Representation as a Basis for Relief from Conviction: Principles for Appellate Review, 13 Colum. J. Law & Social Prob. 1, 76–80 (1977).

fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial. *Powell* v. *Alabama*, 287 U. S. 45 (1932), was such a case.

The defendants had been indicted for a highly publicized capital offense. Six days before trial, the trial judge appointed "all the members of the bar" for purposes of arraignment. "Whether they would represent the defendants thereafter if no counsel appeared in their behalf, was a matter of speculation only, or, as the judge indicated, of mere anticipation on the part of the court." *Id.*, at 56. On the day of trial, a lawyer from Tennessee appeared on behalf of persons "interested" in the defendants, but stated that he had not had an opportunity to prepare the case or to familiarize himself with local procedure, and therefore was unwilling to represent the defendants on such short notice. The problem was resolved when the court decided that the Tennessee lawyer would represent the defendants, with whatever help the local bar could provide.

> "The defendants, young, ignorant, illiterate, surrounded by hostile sentiment, haled back and forth under guard of soldiers, charged with an atrocious crime regarded with especial horror in the community where they were to be tried, were thus put in peril of their lives within a few moments after counsel for the first time charged with any degree of responsibility began to represent them." *Id.*, at 57–58.

This Court held that "such designation of counsel as was attempted was either so indefinite or so close upon the trial as to amount to a denial of effective and substantial aid in that regard." *Id.*, at 53. The Court did not examine the actual performance of counsel at trial, but instead concluded that under these circumstances the likelihood that counsel could have performed as an effective adversary was so re-

mote as to have made the trial inherently unfair.[27]  *Powell* was thus a case in which the surrounding circumstances made it so unlikely that any lawyer could provide effective assistance that ineffectiveness was properly presumed without inquiry into actual performance at trial.[28]

But every refusal to postpone a criminal trial will not give rise to such a presumption.  In *Avery* v. *Alabama*, 308 U. S. 444 (1940), counsel was appointed in a capital case only three days before trial, and the trial court denied counsel's request for additional time to prepare.  Nevertheless, the Court held that since evidence and witnesses were easily accessible to defense counsel, the circumstances did not make it unreasonable to expect that counsel could adequately prepare for trial during that period of time, *id.*, at 450–453.[29]  Similarly, in *Chambers* v. *Maroney*, 399 U. S. 42 (1970), the Court refused "to fashion a *per se* rule requiring reversal of every conviction following tardy appointment of counsel."  *Id.*, at 54.[30]

---

[27] "It is not enough to assume that counsel thus precipitated into the case thought there was no defense, and exercised their best judgment in proceeding to trial without preparation.  Neither they nor the court could say what a prompt and thoroughgoing investigation might disclose as to the facts.  No attempt was made to investigate.  No opportunity to do so was given.  Defendants were immediately hurried to trial. . . . Under the circumstances disclosed, we hold that defendants were not accorded the right of counsel in any substantial sense.  To decide otherwise, would simply be to ignore actualities."  287 U. S., at 58.

[28] See also *Chambers* v. *Maroney*, 399 U. S. 42, 59 (1970) (Harlan, J., concurring in part and dissenting in part); *White* v. *Ragen*, 324 U. S. 760, 764 (1945) *(per curiam); House* v. *Mayo*, 324 U. S. 42, 45 (1945) *(per curiam); Ex parte Hawk*, 321 U. S. 114, 115–116 (1944) *(per curiam)*. Ineffectiveness is also presumed when counsel "actively represented conflicting interests."  *Cuyler* v. *Sullivan*, 446 U. S. 335, 350 (1980).  See *Flanagan* v. *United States*, 465 U. S., at 268.  "Joint representation of conflicting interests is suspect because of what it tends to prevent the attorney from doing."  *Holloway* v. *Arkansas*, 435 U. S. 475, 489–490 (1978).  See also *Glasser* v. *United States*, 315 U. S. 60, 67–77 (1942).

[29] See also *Morris* v. *Slappy*, 461 U. S. 1 (1983).

[30] See also *Mancusi* v. *Stubbs*, 408 U. S. 204, 214 (1972).

Thus, only when surrounding circumstances justify a presumption of ineffectiveness can a Sixth Amendment claim be sufficient without inquiry into counsel's actual performance at trial.[31]

The Court of Appeals did not find that respondent was denied the presence of counsel at a critical stage of the prosecution. Nor did it find, based on the actual conduct of the trial, that there was a breakdown in the adversarial process that would justify a presumption that respondent's conviction was insufficiently reliable to satisfy the Constitution. The dispositive question in this case therefore is whether the circumstances surrounding respondent's representation—and in particular the five criteria identified by the Court of Appeals—justified such a presumption.[32]

---

[31] The Government suggests that a presumption of prejudice is justified when counsel is subject to "external constraints" on his performance. In this case the Court of Appeals identified an "external" constraint—the District Court's decision to give counsel only 25 days to prepare for trial. The fact that the accused can attribute a deficiency in his representation to a source external to trial counsel does not make it any more or less likely that he received the type of trial envisioned by the Sixth Amendment, nor does it justify reversal of his conviction absent an actual effect on the trial process or the likelihood of such an effect. Cf. *United States* v. *Agurs*, 427 U. S., at 110 (prosecutorial misconduct should be evaluated not on the basis of culpability but by its effect on the fairness of the trial). That is made clear by *Chambers* and *Avery*. Both cases involved "external constraints" on counsel in the form of court-imposed limitations on the length of pretrial preparation, yet in neither did the Court presume that the "constraint" had an effect on the fairness of the trial. In fact, only last Term we made it clear that with respect to a trial court's refusal to grant the defense additional time to prepare for trial, an "external constraint" on counsel, great deference must be shown to trial courts, because of the scheduling problems they face. See *Morris* v. *Slappy*, 461 U. S., at 11–12. Conversely, we have presumed prejudice when counsel labors under an actual conflict of interest, despite the fact that the constraints on counsel in that context are entirely self-imposed. See *Cuyler* v. *Sullivan*, 446 U. S. 335 (1980).

[32] See generally Goodpaster, The Trial for Life: Effective Assistance of Counsel in Death Penalty Cases, 58 N. Y. U. L. Rev. 299, 346–349 (1983);

## IV

The five factors listed in the Court of Appeals' opinion are relevant to an evaluation of a lawyer's effectiveness in a particular case, but neither separately nor in combination do they provide a basis for concluding that competent counsel was not able to provide this respondent with the guiding hand that the Constitution guarantees.

Respondent places special stress on the disparity between the duration of the Government's investigation and the period the District Court allowed to newly appointed counsel for trial preparation. The lawyer was appointed to represent respondent on June 12, 1980, and on June 19, filed a written motion for a continuance of the trial that was then scheduled to begin on June 30. Although counsel contended that he needed at least 30 days for preparation, the District Court reset the trial for July 14—thus allowing 25 additional days for preparation.

Neither the period of time that the Government spent investigating the case, nor the number of documents that its agents reviewed during that investigation, is necessarily relevant to the question whether a competent lawyer could prepare to defend the case in 25 days. The Government's task of finding and assembling admissible evidence that will carry its burden of proving guilt beyond a reasonable doubt is entirely different from the defendant's task in preparing to deny or rebut a criminal charge. Of course, in some cases the rebuttal may be equally burdensome and time consuming, but there is no necessary correlation between the two. In this case, the time devoted by the Government to the assembly, organization, and summarization of the thousands of written records evidencing the two streams of checks flowing between the banks in Florida and Oklahoma unquestionably simplified the work of defense counsel in identifying and un-

---

Note, A Functional Analysis of the Effective Assistance of Counsel, 80 Colum. L. Rev. 1053, 1066–1068 (1980); Note, Ineffective Assistance of Counsel: The Lingering Debate, 65 Cornell L. Rev. 659, 681–688 (1980).

derstanding the basic character of the defendants' scheme.[33] When a series of repetitious transactions fit into a single mold, the number of written exhibits that are needed to define the pattern may be unrelated to the time that is needed to understand it.

The significance of counsel's preparation time is further reduced by the nature of the charges against respondent. Most of the Government's case consisted merely of establishing the transactions between the two banks. A competent attorney would have no reason to question the authenticity, accuracy, or relevance of this evidence—there could be no dispute that these transactions actually occurred.[34] As respondent appears to recognize,[35] the only bona fide jury issue open to competent defense counsel on these facts was whether respondent acted with intent to defraud.[36] When

---

[33] It is noteworthy that only about 60 exhibits, consisting primarily of bank records and batches of checks, together with summary charts prepared by the Government, were actually introduced at trial.

[34] None of the several lawyers who have represented respondent, including present counsel who has had months to study the record, has suggested that there was any reason to challenge the authenticity, relevance, or reliability of the Government's evidence concerning the transactions at issue.

[35] See Brief for Respondent 56–61.

[36] The mail fraud statute, under which respondent was convicted, provides:

"Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined not

there is no reason to dispute the underlying historical facts, the period of 25 days to consider the question whether those facts justify an inference of criminal intent is not so short that it even arguably justifies a presumption that no lawyer could provide the respondent with the effective assistance of counsel required by the Constitution.[37]

That conclusion is not undermined by the fact that respondent's lawyer was young, that his principal practice was in real estate, or that this was his first jury trial. Every experienced criminal defense attorney once tried his first criminal case. Moreover, a lawyer's experience with real estate transactions might be more useful in preparing to try a criminal case involving financial transactions than would prior experience in handling, for example, armed robbery prosecutions. The character of a particular lawyer's experience may shed light in an evaluation of his actual performance, but it does not justify a presumption of ineffectiveness in the absence of such an evaluation.[38]

---

more than $1,000 or imprisoned not more than five years, or both." 18 U. S. C. § 1341.

[37] It is instructive to compare this case to *Powell*, where not only was there in reality no appointment of counsel until the day of trial, but also there was substantial dispute over the underlying historical facts. This case is more like *Avery* and *Chambers* than *Powell*.

[38] We consider in this case only the commands of the Constitution. We do not pass on the wisdom or propriety of appointing inexperienced counsel in a case such as this. It is entirely possible that many courts should exercise their supervisory powers to take greater precautions to ensure that counsel in serious criminal cases are qualified. See generally, *e. g.*, Committee to Consider Standards for Admission to Practice in Federal Courts, Final Report, 83 F. R. D. 215 (1979); Bazelon, The Defective Assistance of Counsel, 42 U. Cin. L. Rev. 1, 18–19 (1973); Burger, The Special Skills of Advocacy: Are Specialized Training and Certification of Advocates Essential to Our System of Justice?, 42 Ford. L. Rev. 227 (1973); Burger, Some Further Reflections on the Problem of Adequacy of Trial Counsel, 49 Ford. L. Rev. 1 (1980); Schwarzer, Dealing with Incompetent Counsel—The Trial Judge's Role, 93 Harv. L. Rev. 633 (1980). We address not what is prudent or appropriate, but only what is constitutionally compelled.

The three other criteria—the gravity of the charge, the complexity of the case, and the accessibility of witnesses[39]— are all matters that may affect what a reasonably competent attorney could be expected to have done under the circumstances, but none identifies circumstances that in themselves make it unlikely that respondent received the effective assistance of counsel.[40]

## V

This case is not one in which the surrounding circumstances make it unlikely that the defendant could have received the effective assistance of counsel. The criteria used by the Court of Appeals do not demonstrate that counsel failed to function in any meaningful sense as the Government's adversary. Respondent can therefore make out a claim of ineffective assistance only by pointing to specific errors made by trial counsel.[41] In this Court, respondent's present counsel argues that the record would support such an attack, but we leave that claim—as well as the other alleged trial errors raised by respondent which were not passed upon

---

[39] In this connection, it is worth noting that most of the proof not located in the district in which respondent was tried concerned the largely undisputed historical facts underlying the transactions at issue.

[40] In his brief, respondent goes beyond the factors enumerated by the Court of Appeals in arguing that he did not receive the effective assistance of counsel at trial. For example, respondent points out that trial counsel used notes to assist him during his opening statement to the jury and told the jury it was his first trial. None of these aspects of counsel's representation is so inherently inconsistent with a reasonably effective defense as to justify a presumption that respondent's trial was unfair; indeed they could have been the product of a reasonable tactical judgment.

[41] Since counsel's overall performance was the only question on which the Court of Appeals passed, and is the primary focus of respondent's arguments in this court, we have confined our analysis to a claim challenging counsel's overall performance, and not one based on particular errors or omissions. Should respondent pursue claims based on specified errors made by counsel on remand, they should be evaluated under the standards enunciated in *Strickland* v. *Washington, post,* at 693–696.

by the Court of Appeals—for the consideration of the Court of Appeals on remand.[42]

The judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE MARSHALL concurs in the judgment.

---

[42] The Government argues that a defendant can attack the actual performance of trial counsel only through a petition for postconviction relief under 28 U. S. C. § 2255, and not through direct appeal, because ineffective assistance claims are generally not properly raised in the District Court nor preserved for review on appeal. Whatever the merits of this position as a general matter, in this case respondent did raise his claim in the District Court through his motion for new trial under Federal Rule of Criminal Procedure 33. The District Court denied that motion for lack of jurisdiction because the case was pending on direct appeal at the time, but that ruling was erroneous. The District Court had jurisdiction to entertain the motion and either deny the motion on its merits, or certify its intention to grant the motion to the Court of Appeals, which could then entertain a motion to remand the case. See *United States* v. *Fuentes-Lozano*, 580 F. 2d 724 (CA5 1978); *United States* v. *Phillips*, 558 F. 2d 363 (CA6 1977) *(per curiam); United States* v. *Ellison*, 557 F. 2d 128, 132 (CA7), cert. denied, 434 U. S. 965 (1977); *United States* v. *Hays*, 454 F. 2d 274, 275 (CA9 1972); *United States* v. *Smith*, 433 F. 2d 149, 151–152 (CA5); *United States* v. *Lee*, 428 F. 2d 917, 923 (CA6), cert. denied, 404 U. S. 1017 (1972); *Guam* v. *Inglett*, 417 F. 2d 123, 125 (CA9 1969); *United States* v. *Hersh*, 415 F. 2d 835, 837 (CA5 1969); *Richardson* v. *United States*, 360 F. 2d 366, 368–369 (CA5 1966); *United States* v. *Comulada*, 340 F. 2d 449, 452 (CA2), cert. denied, 380 U. S. 978 (1965); *Ferina* v. *United States*, 302 F. 2d 95, 107, n. 1 (CA8 1962); *Smith* v. *United States*, 109 U. S. App. D. C. 28, 31–32, 283 F. 2d 607, 610–611 (1960) (Bazelon, J., concurring in result), cert. denied, 364 U. S. 938 (1961); *Zamloch* v. *United States*, 187 F. 2d 854, later proceeding, 193 F. 2d 889 (CA9 1951) *(per curiam)*, cert. denied, 343 U. S. 934 (1952); *Rakes* v. *United States*, 163 F. 2d 771, 772–773 (CA4 1947) *(per curiam)*, later proceeding, 169 F. 2d 739, cert. denied, 335 U. S. 826 (1948); 8A J. Moore, Moore's Federal Practice ¶ 33.03[2] (1983); 3 C. Wright, Federal Practice and Procedure § 557, pp. 338–340 (2d ed. 1982). See also *United States* v. *Johnson*, 327 U. S. 106, 109–110 (1946). The Court of Appeals did not reach this claim of actual ineffectiveness, since it reversed the conviction without considering counsel's actual performance. Accordingly this claim remains open on remand.