Keith W. YANCEY, Appellant,

v.

UNITED STATES, Appellee.

Nos. 86–CF–696, 94–CO–1420.

District of Columbia Court of Appeals.

Argued April 9, 1998.
Decided June 15, 2000.

Marion E. Baurley, Washington, DC, appointed by this court, for appellant.

Karen L. Melnik, Assistant United States Attorney, for appellee. Mary Lou Leary, United States Attorney at the time the brief was filed, and John R. Fisher, Mary–Patrice Brown, and Carmen R. Kelley, Assistant United States Attorneys, were on the brief for appellee.

Before WAGNER, Chief Judge, TERRY, Associate Judge, and PRYOR, Senior Judge.

PER CURIAM:

Following a trial by jury, appellant Keith Yancey was convicted of first-degree burglary while armed and first-degree felony murder while armed. Appellant's later motion for collateral relief pursuant to D.C.Code § 23–110 (1996 Repl.) was denied following a hearing before Judge Cheryl M. Long. In this consolidated appeal from his convictions and the denial of the post-trial motion, appellant raises a number of contentions, most of which are related to the preparation and performance of his trial counsel, who took over his case shortly before trial after appellant's earlier retained counsel was suspended from the practice of law, and who was granted a brief continuance to prepare for trial. Upon consideration of the arguments advanced, we affirm.

## I. *Facts*

Appellant and his codefendant John Lyles were charged with first-degree burglary while armed,[1] attempted robbery while armed,[2] first-degree felony murder while armed,[3] and perjury[4] in April 1985. These charges related to the murder of Robert Wiant, a Capitol Hill real estate agent, who was stabbed to death in his home on June 20, 1984. Appellant re-

---

1. D.C.Code §§ 22–1801(a), –3202 (1996 Repl.).

2. D.C.Code §§ 22–2902, –3202 (1996 Repl.).

3. D.C.Code §§ 22–2401, –3202 (1996 Repl.).

4. D.C.Code § 22–2511 (1996 Repl.).

tained W. Edward Thompson to represent him.

Mr. Thompson entered his appearance as retained counsel for defendant in May 1985. The trial date was set for September 25, 1985, before Chief Judge H. Carl Moultrie I. Mr. Thompson worked on the case, filing with the court, among other things, a motion to suppress appellant's videotaped statement, in which appellant admitted some involvement in the crime,[5] and which appellant claimed had been obtained by the police through physical and mental coercion. Several days before the first scheduled trial date, the government requested a continuance because an essential prosecution witness was unavailable due to a medical emergency. Judge Moultrie granted that motion and continued the trial to November 21, 1985. In October 1985, Mr. Thompson was suspended from the practice of law for a period of three months, commencing on October 27, 1985. Attorney Adgie O'Bryant entered an appearance for appellant on November 18, 1985, and filed a request for a continuance. Among the reasons listed by Mr. O'Bryant in requesting the continuance were that he was "unavailable for trial on November 21, 1985," and that "[t]he defendant requests additional time for his new counsel to prepare his defense."

At a hearing held on November 20, 1985, Mr. O'Bryant elaborated on his reasons for requesting a continuance, explaining that he had not spoken to any of the witnesses and was "totally not prepared to go to trial to try a murder case in two days." Over objections by Mr. O'Bryant that he needed more time to prepare, Judge Moultrie granted appellant a three-day continuance, explaining that the case was not complex, and November 25th was the only day the case could fit into the court's calendar. Judge Moultrie assisted Mr. O'Bryant in

having his other matters continued so he could devote himself solely to preparing for appellant's trial, and ordered him to be in court to try the case on Monday, November 25, 1985.

On November 25th, Mr. O'Bryant appeared in court with his own attorney, Melvin Marshall. Mr. Marshall spoke on behalf of Mr. O'Bryant, explaining that there were witnesses to whom Mr. O'Bryant had not spoken and physical evidence that Mr. O'Bryant had not had an opportunity to see, and that therefore Mr. O'Bryant felt that he was "constitutionally ineffective" at that time. Judge Moultrie, who had previously explained to Mr. O'Bryant that the trial would go forward, stated:

> Well, ineffective depends on what transpires, sir. He may rise to the occasion. He's a good lawyer.

Later that day, appellant addressed Judge Moultrie, explaining that he did not feel the trial would be fair because Mr. O'Bryant only had a few days to prepare. Judge Moultrie explained to appellant that the matter of the continuance had already been decided and resumed hearing motions. The trial concluded on December 2, 1985, when a jury found appellant guilty of first-degree murder while armed and first-degree burglary while armed. He was sentenced in January 1986 and resentenced in April 1986. Appellant filed a timely notice of appeal.

In August 1988, appellant filed a motion seeking to vacate his convictions, alleging ineffective assistance of counsel. His primary contention was that Mr. O'Bryant was ineffective at trial due to the lack of time he was permitted to prepare for the case. Appellant's direct appeal was held in abeyance pending resolution of his collateral attack.

---

5. While Yancey did not make an outright confession, his admissions are incriminating. In his statement, he admitted knowing that his co-defendant intended to rob the decedent and had pointed out to him some of the furnishings in the decedent's home before the decedent asked them to leave. Yancey claimed that he declined Lyles' invitation to take a knife and return to the house, but that he waited outside when Lyles re-entered the house, and unknown to him at the time, killed the decedent.

Because Judge Moultrie by then was deceased, appellant's motion came before the Honorable Cheryl Long. Following a five-day hearing, which consisted of the testimony of witnesses and representations from counsel, Judge Long issued a sixty-four page memorandum opinion and order denying appellant's claim for relief. In that order, Judge Long reviewed the pre-trial investigation, pretrial motion hearing, and trial performance of Mr. O'Bryant in great detail. She found that appellant had failed to show any constitutional deficiency on the part of his trial counsel, and that even if he had succeeded in doing so, the deficiency would not have prejudiced appellant, given the strength of the government's case and the poor credibility of appellant and appellant's potential witnesses.[6] Appellant filed a second notice of appeal, this one from the denial of his motion, and the two appeals were consolidated in this court.

## II. *The Right to Choose Counsel*

■ Appellant contends the trial court violated his right to choose his own counsel by ruling that Mr. O'Bryant, with whom appellant now claims he had not established an attorney-client relationship prior to the continuance hearing on November 20, 1985, must try the case. A defendant has a constitutionally protected right to choose his own counsel, arising out of both the Sixth Amendment right to counsel and notions of due process under the Fifth Amendment. Such right includes "a fair opportunity to secure counsel of his own choice." *Crooker v. California*, 357 U.S. 433, 439, 78 S.Ct. 1287, 2 L.Ed.2d 1448 (1958) (quoting *Powell v. Alabama*, 287 U.S. 45, 53, 53 S.Ct. 55, 77 L.Ed. 158 (1932)) (other citations omitted). The Supreme Court held in *Powell* that "the failure of the trial court to give [de-

fendants] a reasonable time and opportunity to secure counsel was a clear denial of due process." 287 U.S. at 71, 53 S.Ct. 55. This right is not absolute, however, and " 'cannot be insisted upon in a manner that will obstruct an orderly procedure in courts of justice, and deprive such courts of the exercise of their inherent powers to control the same.' " *Lee v. United States*, 98 U.S.App.D.C. 272, 274, 235 F.2d 219, 221 (1956) (quoting *Smith v. United States*, 53 App.D.C. 53, 55, 288 F. 259, 261 (1923)). The right may be balanced against other factors by the trial court in order to prevent the administration of justice from being impeded. *Douglas v. United States*, 488 A.2d 121, 143 (D.C.1985) (citation omitted).

■ We are not persuaded that the record factually supports appellant's claim that the trial court deprived him of his right to retain counsel of his choice. Thompson was unavailable to practice law and would continue to be unavailable for nearly three months. Furthermore, appellant's claim that he did not know who Mr. O'Bryant was, and that he had not established an attorney-client relationship with Mr. O'Bryant, though expressed by appellant at the § 23–110 hearing, are noticeably absent from the record of the continuance hearing before Judge Moultrie. Mr. O'Bryant entered his appearance as appellant's counsel, and nothing in the record of that hearing suggests that this appearance was only for the purpose of requesting a continuance "for Mr. Thompson," as appellant now claims. In appellant's original motion for a continuance, Mr. O'Bryant expressed that "Mr. Thompson can no longer represent the defendant," and that "defendant requests to have a fair opportunity and reasonable time to employ counsel of his choosing to wit attorney Adgie O'Bryant, Jr." At the time of the

6. The trial court declined to rule on whether the Judge Moultrie abused his discretion in denying a continuance, stating:

Where [Chief Judge Moultrie's] scheduling decision is concerned, such a ruling cannot result in a grant of a new trial because such

relief is not within the purview and power of the Superior Court. The provision of a new trial, based upon damage that accrues from a judicial decision, lies only in the District of Columbia Court of Appeals.

continuance hearing, therefore, it appeared that appellant had chosen Mr. O'Bryant to represent him.[7] Judge Moultrie did not violate appellant's right to counsel of his choice by ruling that he go to trial with an attorney who appeared to be of his choosing. Following the hearing on appellant's § 23–110 motion, the trial court found that Mr. O'Bryant had indicated that he would take the case if financial arrangements could be made, and his prior, counsel Mr. Thompson, informed O'Bryant that appellant's family would make those arrangements. The trial court further found that Mr. O'Bryant sought a continuance "specifically for the purpose of affording the Yancey family and Mr. Thompson more time to make firm financial arrangements for hiring Mr. O'Bryant." [8] Appellant had spoken to Mr. O'Bryant before he entered his appearance. Thus, it appears that appellant had in fact chosen Mr. O'Bryant as Mr. Thompson's successor, with only the financial arrangements to be resolved. The record of the continuance hearings and the § 23–110 hearing support the conclusion that appellant had in fact chosen Mr. O'Bryant as his counsel, although counsel sought more time to finalize financial arrangements and to prepare for trial. Under these circumstances, we do not view this to be a case where appellant was deprived of his right to select counsel of his choice. In Part IV of this opinion, we consider appellant's argument that the denial of a longer continuance deprived him of effective assistance of counsel.

### III. *The Monroe–Farrell Claim*

■ Appellant also contends that the trial court violated his Sixth Amendment right to counsel by failing to conduct an inquiry into the pretrial preparation of Mr.

O'Bryant when appellant expressed concern that his attorney did not have enough time to prepare. When a defendant makes a claim of ineffective assistance of counsel pretrial, the trial court must conduct an inquiry sufficient to assess the counsel's preparedness and determine whether the defendant's claim has merit. *See McFadden v. United States*, 614 A.2d 11, 15 (D.C. 1992). A failure to do so will result in reversal, *see id.* at 17–18, or remand for an inquiry into the trial counsel's pretrial preparedness (a *"Monroe–Farrell"* hearing). *See Bass v. United States*, 580 A.2d 669, 671 (D.C.1990).

■ In this case, appellant told Judge Moultrie during the suppression hearing that he did not believe the trial would be fair because his attorney had not had enough time to prepare. Judge Moultrie, apparently taking this as additional argument in support of a longer continuance, resumed the hearing without inquiring further into appellant's claims. We need not reach the issue of whether appellant's brief statement to the court was sufficient to require an inquiry into his concerns, *see Monroe v. United States*, 389 A.2d 811, 819–20 (D.C.), *cert. denied,* 439 U.S. 1006, 99 S.Ct. 621, 58 L.Ed.2d 683 (1978), *Farrell v. United States*, 391 A.2d 755 (D.C. 1978), as Judge Long made findings on the record relating to Mr. O'Bryant's pretrial preparation; these findings are similar to those that would be made by a trial court on remand for a *Monroe–Farrell* hearing.

Based on the evidence presented at appellant's § 23–110 hearing, Judge Long found that Mr. O'Bryant's pretrial investigation was extensive despite the time constraints. After the hearing in which he

7. The only assertion made by either Mr. O'Bryant or appellant during the continuance hearing that could have suggested a desire to wait for Mr. Thompson was Mr. O'Bryant's suggestion that the case be continued until January 27, 1986, the date that Mr. Thompson anticipated being permitted to resume practice. During the course of the hearing, Mr. O'Bryant expressed a willingness to proceed to trial on December 9 th or December 16 th. However, the trial court had other cases set for trial on those dates.

8. Mr. O'Bryant was aware that the family had already paid Mr. Thompson $10,000, and according to the trial court's findings, "Mr. Thompson had already spent the money."

was granted the short continuance, Mr. O'Bryant met with Mr. Thompson to retrieve appellant's file and discuss the case. He reviewed the notes of the private investigator who had been hired by Mr. Thompson and met with the trial prosecutor to begin the discovery conference, where he reviewed government evidence. Mr. O'Bryant also met with appellant on several occasions to discuss appellant's version of the events of the day of the murder and how they related to the government's evidence. He personally interviewed several witnesses, including those who appellant claimed provided him with an alibi. He also retraced the route appellant claimed to have taken on the day of the murder in an attempt to reconstruct the events of that day. In addition, he reviewed the physical evidence with the assistance of experts.

After reviewing Mr. O'Bryant's pretrial preparation, Judge Long concluded that Mr. O'Bryant, despite the time constraints imposed on him, "conducted a sufficient, reasonable, and competent pre-trial investigation." Judge Long noted that those aspects of Mr. O'Bryant's pretrial preparation about which appellant complained, including his failure to locate two witnesses, the fact that he did not take photos or make diagrams of the crime scene, and the fact that he did not hire an investigator, had no detrimental effect on appellant's case, as the witnesses could not exonerate appellant or account for his whereabouts at the time of the crime.

Based on Judge Long's findings, which were amply supported by the record, we conclude that appellant's trial counsel was constitutionally prepared for trial. Therefore, even if the trial court did err in refusing to conduct a further inquiry into appellant's concerns, there is no need to remand the case for a *Monroe–Farrell* hearing in view of the trial court's in-depth inquiry and determination that trial counsel was prepared constitutionally. *See Wingate v. United States*, 669 A.2d 1275, 1279 (D.C.1995) ("If the judge in a § 23–

110 motion hearing determine[s] that trial counsel was in fact constitutionally prepared, the *Monroe–Farrell* issue ... effectively disappear[s] from the case, even if the inquiry actually made [was] insufficient.") (citing *Matthews v. United States*, 459 A.2d 1063, 1066 (D.C.1983)).

## IV. *The Ruling on Continuance and the Claim of Deprivation of Counsel*

Appellant argues that the trial court abused its discretion in failing to grant a continuance of sufficient duration to allow his counsel to prepare for trial. He contends that the trial court's failure to grant a longer continuance interfered with his Sixth Amendment right to counsel. The duty of the court to assure that the accused's right to counsel is protected "is not discharged by an assignment [of counsel] at such a time or under such circumstances as to preclude the giving of effective aid in the preparation and trial of the case." *Powell, supra,* 287 U.S. at 71, 53 S.Ct. 55. "Thus, the trial judge may not insist on such expeditiousness that counsel for the defendant lacks a reasonable time to prepare for trial; stripping away the opportunity to prepare for trial is tantamount to denying altogether the assistance of counsel for the defense." *United States v. Burton,* 189 U.S.App.D.C. 327, 331, 584 F.2d 485, 489 (1978). That is essentially appellant's argument here.

Appellant acknowledges that the grant or denial of a continuance is a matter within the trial court's discretion, which is not subject to reversal absent an abuse of discretion. *See id.; Welch v. United States,* 689 A.2d 1, 5 (D.C.1996); *see also Morris v. Slappy,* 461 U.S. 1, 11, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983). In considering whether the trial court has properly exercised its discretion, we consider, among other factors, whether the trial court considered relevant factors, or relied upon improper factors, and whether the reasons for its actions are reasonably supported. *Johnson v. United States,* 398

A.2d 354, 365 (D.C.1979). In the context here, the reasonableness of the length of a continuance allowed for trial preparation depends upon the circumstances. Among the factors for consideration are:

> the length of the requested delay; whether other continuances have been requested and granted; the balanced convenience or inconvenience to the litigants, witnesses, counsel, and the court; whether the requested delay is for legitimate reasons, or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; whether the defendant has other competent counsel prepared to try the case, including the consideration of whether the other counsel was retained as lead or associate counsel; whether denying the continuance will result in identifiable prejudice to defendant's case, and if so, whether this prejudice is of a material or substantial nature; the complexity of the case; and other relevant factors which may appear in the context of any particular case.

*Burton*, 189 U.S.App.D.C. at 332–33, 584 F.2d at 491 (footnotes and citations omitted). It is not apparent that the trial court considered anything in this case other than the demands of the criminal docket. An examination of the relevant considerations, which are outlined in *Burton*, weigh heavily in favor of a longer continuance than the trial court granted. Appellant found himself in circumstances not of his own making. He retained his initial counsel and had nothing to do with that attorney's suspension from the practice of law such that he could no longer represent him. The government had sought and received a continuance previously at a time when initial counsel could have proceeded. There is no showing that with sufficient notice, a convenient date for the trial could not have been secured without substantial prejudice to the government. While new counsel was available to try the case, it was reasonable under the circumstances to allow him more time to prepare for this first-

degree murder trial and no reason not to allow it, except that there was no available date in December for trial. The trial court failed to take into account other relevant factors and balance them against its desire to control its docket and have the case proceed to trial expeditiously. Therefore, we conclude that the trial court exercised its discretion erroneously in denying a continuance of more reasonable duration under the circumstances. *See Johnson, supra*, 398 A.2d at 365 (failure to consider relevant factors may result in erroneous exercise of discretion).

■ "[A] myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality." *Burton, supra*, 189 U.S.App.D.C. at 333, 584 F.2d at 491 (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964)). Because not every denial of a request for additional time for preparation will result in a denial of due process and require reversal, *id.* (citing *Ungar, supra*, 376 U.S. at 589, 84 S.Ct. 841), we are obliged to consider several aspects of the denial of continuance in this instance.

### A.

The Supreme Court, in *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), addressed this question at length. It declined a formulaic approach, but instead offered a broad litmus: a reviewing court should consider whether counsel representing an accused, was enabled to act as an advocate throughout the process so as to engage in meaningful adversarial testing of the prosecution's case. Failing in that, the constitutional protection is lost. *Id.* at 656–57, 104 S.Ct. 2039. In one category of cases the court perceived circumstances of a magnitude where there would be "an actual breakdown of the adversarial process." *Id.* at 657, 104 S.Ct. 2039. In those situations a court may presume counsel's ineffectiveness because "circumstances are so

likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *Id.* at 658, 104 S.Ct. 2039. However, the court recognized that "every refusal to postpone a criminal trial will not give rise to such a presumption." *Id.* at 661, 104 S.Ct. 2039. In instances where no presumption is invoked, greater attention is given to counsel's performance during the actual trial of the case. In that posture, the two-pronged test announced in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), is applied. (*Strickland* was decided on the same day as *Cronic.*)

In assessing what magnitude of circumstances destroys the adversarial balance so as to trigger a presumption of ineffective counsel, the circumstances may be varied and different. There is no *per se* rule. *See Chambers v. Maroney,* 399 U.S. 42, 54, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). A most obvious case for invoking the presumption is the complete denial of counsel. *Cronic, supra,* 466 U.S. at 659, 104 S.Ct. 2039. The refusal to allow counsel to engage in cross-examination is similarly defective. *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). In *Powell,* a trial judge appointed all members of the bar to represent nine defendants at arraignment in a capital offense. 287 U.S. at 45, 53 S.Ct. 55. A few days later—the trial date—a lawyer from another state appeared in court to inquire about the cases. The trial judge appointed the lawyer to represent the defendants and immediately initiated trial proceedings. In a hostile setting, involving clients who were not literate, the Supreme Court held that "[u]nder the circumstances . . . [the] defendants were not accorded the right of counsel in any substantial sense." *Id.* at 58, 53 S.Ct. 55. *See also Brown v. Mississippi,* 297 U.S. 278, 56 S.Ct. 461, 80 L.Ed. 682 (1936). In *Avery v. Alabama,* 308 U.S. 444, 60 S.Ct. 321, 84 L.Ed. 377 (1940), the accused was tried in a capital case within a few days after arraignment. Despite the requests of two local practicing attorneys for a continuance, the trial went forward.

On appeal the conviction was affirmed; the court referred to the rural jurisdiction in question, and noted that counsel had had access to witnesses and were able to inform themselves in order to adequately defend. *Id.* at 450, 60 S.Ct. 321.

■ The circumstances in which ineffective assistance of counsel may be presumed without inquiry into counsel's performance are exceptional. The presumption is available "when although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial." *Cronic, supra,* 466 U.S. at 659–60, 104 S.Ct. 2039. While it would be extremely difficult, we are not persuaded that competent counsel could not render effective assistance with a few days of concentrated preparation where prior counsel had investigated the case and made his files available to successor counsel, at least not to the extent that a presumption of ineffectiveness would be justified. *See id.* at 660–62, 104 S.Ct. 2039.

Appellant's trial attorney was experienced in defending persons charged with criminal offenses. He was acquainted with local practice and procedures. Notwithstanding an intense time pressure, he utilized available resources to prepare. He studied existing investigative files. He personally interviewed potential witnesses and took full advantage of discovery from the government. Ultimately counsel had access to the significant evidence in the case. He therefore was able to consult with his client and weigh the government's case and possible defenses. While it is a serious aspect of this case that the judicial ruling as to continuance provoked a legitimate constitutional concern, we conclude that despite all that occurred, trial counsel was able to prepare adequately for trial in a meaningful way. We, therefore, reject

the argument that appellant's counsel's preparation was presumptively deficient, making inquiry into actual prejudice unnecessary.

### B.

As the Court made clear in *Cronic* where no presumptive deficiency of ineffective counsel is invoked, we review counsel's actual performance at trial, utilizing the standards set forth in *Strickland, supra.* In this instance, we find no basis to conclude that trial counsel rendered ineffective assistance. In ruling on appellant's § 23–110 motion, Judge Long made an extended effort to probe counsel's performance. She virtually reconstructed the trial proceedings. In the course of a prolonged hearing, she heard the testimony of a number of witnesses. She was aware of factual questions which arose at trial. She gave particular attention to trial counsel's preparation and presentation of appellant's defense, including cross-examination of adverse witnesses. Her conclusion was that, notwithstanding the time constraints which existed, counsel mounted a defense which was both vigorous and adequate. She further concluded that even if counsel's performance was to be deemed deficient as to matters claimed by appellant, there was no basis, under *Strickland,* to conclude that the jury's verdict would have been different.

█ In rulings of this kind, the trial judge, especially when he or she is obliged to conduct a hearing, is called upon to resolve questions of law and fact. Our scope of review is two-fold. As to factual findings, as here, we consider with some deference, whether the findings are supported by the evidence presented. However, we consider *de novo* whether the trial court erred as to its legal conclusions.

*Derrington v. United States,* 681 A.2d 1125, 1132 (D.C.1996) (citation omitted).

Judge Long's comprehensive order contains specific findings regarding counsel's investigation, preparation and trial performance.[9] The record supports these findings. Similarly, we perceive no error in her legal conclusion that appellant has failed to meet both prongs of the *Strickland* test. Thus we conclude that the trial judge did not err in this critical aspect of the case.

### C.

Lastly, we consider whether the trial court's denial of a continuance resulted in substantial prejudice to appellant, independent of *Cronic,* with the government having the burden of persuasion on the issue. *See Burton, supra.*

Although Judge Long, in the collateral attack proceeding, correctly viewed the conduct of the trial through the lens of appellant's Sixth Amendment claim of ineffective assistance of counsel (rather than examining the effect of an erroneous denial of a continuance), her analysis and findings demonstrate why, in our view, it would be bare speculation to conclude that with additional time to prepare Mr. O'Bryant's chances of winning acquittal would have improved significantly. Judge Long carefully examined the evidence presented by the government, the defense actually mounted by Mr. O'Bryant, and alternative defenses (or alternative support for the chosen defense) that might have been presented with additional time. As she pointed out, "the prosecution produced a strong case that included eyewitness testimony and various admissions of the defendant," as well as palmprint and fingerprint evidence that placed appellant inside the home where the stabbing took

---

**9.** At the § 23–110 hearing, appellant made a belated contention seeking the remedy of a new trial on the basis of newly discovered evidence. Appellant claimed, in this respect, that his codefendant would exonerate him. Since a collateral attack proceeding is not a catch-all for all remedies, it is clear that the assertions made were beyond the purview of the relief sought. *See Vaughn v. United States,* 600 A.2d 96 (D.C.1991). *See also* Super. Ct.Crim. R. 33 (motion for new trial).

place. Moreover, in preparing appellant's defense of partial alibi, O'Bryant had received "no fewer than three versions" from appellant "of what happened on the morning of the murder," including his insistence "that he had never been at the decedent's home at all ... until ... confronted with the government evidence that he indeed had been inside the home." Judge Long heard testimony from the additional alibi witnesses appellant contends should have been called, and concluded that "they would not have made a difference in the outcome of the trial," either because their accounts contained "significant inconsistencies" *inter se* (as well as conflicting with appellant's own statements to the police), because they could not account for appellant's whereabouts at the relevant time, or because in the case of one witness, calling her as a witness might well have elicited the fact that appellant admitted the killing to her. Indeed, notes of an investigator hired by the defense disclosed that appellant had admitted the stabbing to four persons.

The record developed before Judge Long and our review of the trial record thus reveal no manner in which O'Bryant, given additional time, could have more effectively attacked the government's formidable evidence or buttressed an alibi defense contradicted by the forensic evidence and weakened by the inconsistencies and plain incredibility (as the judge found) of one or more of the witnesses supporting it. We are not persuaded, in sum, that the failure to grant a longer continuance had a "substantial and injurious effect or influence in determining the jury's verdict." *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).[10]

*Affirmed.*

---

**10.** Given our rejection of appellant's constitutional (i.e., Sixth Amendment) claims, we see no reason to apply the constitutional test for harmless error, *see Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), to the erroneous failure to grant the continuance. Even if we applied that test, moreover, the result would not be different.