Jay Harry FERN, Petitioner–Appellant,

v.

Richard B. GRAMLEY, Warden, Pontiac Correctional Center, Respondent–Appellee.

No. 94–2258.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 19, 1996.

Decided Oct. 31, 1996.

Gary Senner, Elissa Isaacs (argued), Sonnenschein, Nath & Rosenthal, Chicago, IL, for Jay Harry Fern.

Bradley P. Halloran, Paul Chevlin (argued), Rita M. Novak, Office of the Attorney General, Chicago, IL, for Richard B. Gramley and Roland W. Burris.

Before COFFEY, FLAUM, and MANION, Circuit Judges.

FLAUM, Circuit Judge.

Without a prior plea agreement, Jay Harry Fern pleaded guilty in an Illinois court in May 1989 to two counts of unlawful delivery of a controlled substance (cocaine). The court sentenced him on July 19 of the same year to concurrent twenty-five- and ten-year terms and imposed fines totaling $75,000. After announcing its sentence, the court informed Fern of his right to appeal and ad-

vised him that he would first have to file a written motion asking the trial court to permit him to withdraw his guilty plea. Despite this admonition, Fern's attorney did not file the motion mandated by Illinois Supreme Court Rule 604(d), but instead appealed directly to the Appellate Court of Illinois. Not surprisingly, that court refused to reach the merits, rejecting Fern's appeal on the basis of counsel's failure to file the Rule 604(d) motion. *People v. Fern*, 199 Ill.App.3d 983, 146 Ill.Dec. 68, 557 N.E.2d 1010 (1990).

In his state petition for post-conviction relief, filed *pro se*, Fern alleged, *inter alia*, that his attorney rendered ineffective assistance by failing to preserve his direct appeal. The trial court summarily dismissed Fern's petition, and the Illinois appellate court affirmed. *People v. Fern*, 240 Ill.App.3d 1031, 180 Ill. Dec. 651, 607 N.E.2d 951, *appeal denied*, 151 Ill.2d 569, 186 Ill.Dec. 387, 616 N.E.2d 340 (1993). Fern then brought this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Finding that Fern had little hope of success on appeal and that he therefore could not show prejudice as required by *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the district court denied the writ and Fern's motion for reconsideration. After initial briefing in this court, we ordered that counsel be appointed to represent Fern and requested that counsel for both parties address the applicability of *Castellanos v. United States*, 26 F.3d 717 (7th Cir.1994) and *United States v. Nagib*, 56 F.3d 798 (7th Cir.1995). We now vacate and remand to the district court.

## I.

In *Castellanos*, we stated unequivocally that "[i]f the defendant told his lawyer to appeal, and the lawyer dropped the ball, then the defendant has been deprived, not of effective assistance of counsel, but of *any* assistance of counsel on appeal. Abandonment is a *per se* violation of the sixth amendment." *Castellanos*, 26 F.3d at 718 (citing *United States v. Cronic*, 466 U.S. 648, 658–59, 104 S.Ct. 2039, 2046–47, 80 L.Ed.2d 657 (1984)). Assuming that Fern instructed his attorney[1]

to appeal his sentence, *Castellanos* therefore would appear to control. Respondent, however, points to two reasons why we should not apply *Castellanos* here. First, respondent argues that *Castellanos* announced a new rule, which under *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), cannot be applied in the context of Fern's collateral attack on a sentence that became final before *Castellanos* was decided. Second, respondent maintains that the decision of the Appellate Court of Illinois, which rejected Fern's state post-conviction petition on the ground that he had not demonstrated prejudice, was not contrary to, or an unreasonable application of, Federal law as determined by the United States Supreme Court—the conclusion we must draw in order to grant Fern's petition under the new 28 U.S.C. § 2254(d) enacted as part of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104–132, 110 Stat. 1214. *See Lindh v. Murphy*, 96 F.3d 856 (7th Cir.1996). Although these arguments involve related considerations, we discuss them separately.

### A.

■ Under the non-retroactivity doctrine announced in *Teague*, we will not apply on collateral review a rule of criminal procedure that "was not *dictated* by precedent existing at the time the defendant's conviction became final." 489 U.S. at 301, 109 S.Ct. at 1070 (emphasis in original); *see Butler v. McKellar*, 494 U.S. 407, 412–14, 110 S.Ct. 1212, 1216–17, 108 L.Ed.2d 347 (1990); *Jones v. Page*, 76 F.3d 831, 849–51 (7th Cir.1996), cert. denied, —— U.S. ——, 117 S.Ct. 363, 136 L.Ed.2d 254 (1996). Both parties agree that the relevant date for *Teague* purposes is 1990, when Fern's direct appeal had run its course. *See Caspari v. Bohlen*, 510 U.S. 383, 389–90, 114 S.Ct. 948, 953, 127 L.Ed.2d 236 (1994); *Jones*, 76 F.3d at 851. We therefore must decide whether the law as it existed in 1990 compelled the conclusion that an attorney's forfeiture of a client's right to appeal constituted ineffective assistance of counsel regardless of prejudice. *See Caspari*, 510 U.S. at 389–90, 114 S.Ct. at 953; *Jones*, 76 F.3d at 851.[1]

---

1. Because we conclude that Fern does not ask us to apply a new rule, we need not consider whether either of the exceptions to the non-retroactivity principle applies.

An initial clue in this regard, overlooked by both petitioner and respondent, is that *Castellanos* itself was decided on review of a habeas petition brought pursuant to 28 U.S.C. § 2255. *See* 26 F.3d at 718. Because *Teague* applies to petitions brought under § 2255 as well as petitions brought under § 2254, *see Haley v. United States*, 78 F.3d 282, 285 n. 2 (7th Cir.1996) (per curiam); *Dawson v. United States*, 77 F.3d 180, 183 (7th Cir.1996), the nonretroactivity doctrine should have barred our announcement of a "new" rule in *Castellanos*, if a new rule it was. It therefore would seem untenable to maintain, as respondent does, that *Castellanos* and *Nagib* constituted "a vast departure from the familiar performance-prejudice analysis first announced in *Strickland.*" That is, of course, unless we erred in *Castellanos*. We do not believe we erred. A close analysis of *Castellanos* reveals that our opinion in that case was grounded firmly in Supreme Court precedent already extant in 1990. *See Castellanos*, 26 F.3d at 718 ("Abandonment is a *per se* violation of the sixth amendment.") (citing *Cronic*, 466 U.S. at 658–59, 104 S.Ct. at 2046–47); *id.* at 719 ("[T]he 'prejudice' component of *Strickland* does not apply when an appellate lawyer fails either to file a brief or to satisfy the requirements of *Anders* in seeking leave to withdraw.") (citing *Penson v. Ohio*, 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988)). At the very least, we agree with Fern that we did not believe we were announcing a new rule in *Castellanos*.

Yet this does not necessarily mean that *Castellanos* did not in fact announce a new rule within the meaning of *Teague*, for "[t]he 'new rule' principle ... validates reasonable, good-faith interpretations of existing precedents made by state courts even though they are shown to be contrary to later decisions." *Butler*, 494 U.S. at 414, 110 S.Ct. at 1217. "Courts frequently view their decisions as being 'controlled' or 'governed' by prior opinions even when aware of reasonable contrary conclusions reached by other courts." *Id.* at 415, 110 S.Ct. at 1217. We must look directly at the caselaw as it existed in 1990 and ask whether the issue Fern now raises "was sus-ceptible to debate among reasonable minds." *Id.* If so, then the rule announced in *Castellanos*, at least as far as Fern is concerned, was a new rule and cannot be applied to his petition.

▇ Fern points to a triad of Supreme Court cases which he insists had established by 1990 the rule upon which he now relies: *Penson v. Ohio*, 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988); *Evitts v. Lucey*, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985); and *Rodriquez v. United States*, 395 U.S. 327, 89 S.Ct. 1715, 23 L.Ed.2d 340 (1969). We doubt that *Evitts* and *Rodriquez* alone can be said to dictate the rule that failure to perfect a direct appeal from a state-court conviction obviates the need to show prejudice. *Rodriquez* held that where counsel's failure to file a notice of appeal deprived an accused of his right to appeal a federal district court's judgment of conviction, the accused could not be required to specify in his subsequent habeas petition the points he would have raised on appeal. *See* 395 U.S. at 329–30, 89 S.Ct. at 1717. Although *Rodriquez* therefore was quite similar to the instant case, it dealt with the loss of the right to appeal from a *federal* conviction and predated *Evitts*' holding that ineffective assistance of counsel on an accused's first appeal as of right from a state-court conviction violated the Due Process Clause of the Fourteenth Amendment. Moreover, *Rodriquez* is cited only once in *Evitts* in a footnote and not at all in *Penson*, the other two cases upon which Fern relies. As for *Evitts*, although that case did establish once and for all that an accused convicted in state court is entitled to effective assistance of counsel in the course of a direct appeal as of right, the Court specifically noted that, on the facts before it, there was no need to "decide the content of appropriate standards for judging claims of ineffective assistance of appellate counsel." *Evitts*, 469 U.S. at 392, 105 S.Ct. at 833.

*Penson*, however, compels the rule of law that Fern seeks to have applied to his petition. In *Penson*, Penson's appellate attorney filed only a "Certification of Meritless Appeal and Motion" stating that there were no grounds for reversal and asking to be removed from the case. The Ohio Court of Appeals granted the attorney's wish and pro-

ceeded to conduct its own review of the record. Although it found that there were "arguable" grounds for appeal and that one count had to be reversed, the appeals court determined that Penson suffered no prejudice as to the remaining counts because the court itself had reviewed the record with the benefit of arguments by counsel for codefendants. The Supreme Court reversed. Noting that "[t]he need for forceful advocacy does not come to an abrupt halt as the legal proceeding moves from the trial to the appellate stage," the Court found that "the Ohio Court of Appeals deprived both petitioner and itself of the benefit of an adversary examination and presentation of the issues." 488 U.S. at 85, 109 S.Ct. at 352. The Court next went on to consider the State's argument that "petitioner has failed to show prejudice under *Strickland v. Washington*." *Id.* Because "the denial of counsel ... left petitioner completely without representation during the appellate court's actual decisional process," the Court rejected the notion that Penson should be required to show prejudice:

As we stated in *Strickland*, the "[a]ctual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice." ... Our decision in *United States v. Cronic*, likewise, makes clear that "[t]he presumption that counsel's assistance is essential requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage of the trial." ... Because the fundamental importance of the assistance of counsel does not cease as the prosecutorial process moves from the trial to the appellate stage, ... the presumption of prejudice must extend as well to the denial of counsel on appeal.

The present case is unlike a case in which counsel fails to press a particular argument on appeal ... or fails to argue an issue as effectively as he or she might. Rather, at the time the Court of Appeals first considered the merits of petitioner's appeal, appellate counsel had already been granted leave to withdraw; petitioner was

thus entirely without the assistance of counsel on appeal.... It is therefore inappropriate to apply either the prejudice requirement of *Strickland* or the harmless-error analysis of *Chapman* [*v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)].

488 U.S. at 88–89, 109 S.Ct. at 354 (citations omitted).[2] Any court aware of this language could reach no conclusion but that to apply the prejudice prong of *Strickland* to an individual in Fern's shoes would be to contravene the Supreme Court's understanding of the right to effective assistance of counsel.

Respondent nevertheless objects that *Penson* is "too broad" to have dictated our holding in *Castellanos*. We do not believe, however, that *Teague* should be read as a manifesto hostile to all but the narrowest conception of legal determinism. Our system of jurisprudence is premised on the notion that, at least in some cases, precedent will lead ineluctably to a specific legal outcome. *Strickland*, in announcing its two-prong performance/prejudice test, was careful to leave untouched the rule that prejudice would be presumed in the case of a constructive or actual denial of counsel. *Evitts* established that ineffectiveness claims could be raised as to appellate counsel to which an accused was entitled under *Douglas v. California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963). *Penson*, finally, confirmed that the rule of presumed prejudice in cases of actual or constructive denial of counsel applied to appellate counsel as well as trial counsel. All of the constitutional pieces were in place one year before Fern was sentenced.

If what respondent means by "too broad" is that the facts of *Penson* differ from those presented by Fern's petition, respondent certainly is correct: *Penson* was "entirely without the assistance of counsel on appeal" because his attorney failed to file a merits brief; Fern lost his direct appeal on the merits because his attorney failed to file a motion in the trial court. Penson at least enjoyed the benefit of the state appellate court's indepen-

**2.** In a footnote following this passage, the Court noted that "[a] number of the Federal Courts of Appeals have reached a like conclusion when faced with denials of appellate counsel." *Pen-*

*son,* 488 U.S. at 89 n. 10, 109 S.Ct. at 354 n. 10. As support, it cited, *inter alia*, our holding in *United States ex rel. Thomas v. O'Leary*, 856 F.2d 1011 (7th Cir.1988). *Id.*

dent review of the record and assessment of his legal claims. If anything, therefore, Fern suffered a more severe deprivation of his Sixth Amendment rights than did Penson. It is true that on collateral review the Illinois appellate court ultimately scanned the record to determine Fern's chance of success on appeal, but this is precisely the approach disapproved in *Penson.*[3]

At oral argument, respondent attempted to distinguish the present case from the kind of actual or constructive denial of counsel to which *Strickland, Cronic* and *Penson* refer on the ground that those cases involved circumstances in which counsel was "either totally absent, or prevented from assisting the accused." *See Cronic,* 466 U.S. at 659 n. 25, 104 S.Ct. at 2047 n. 25. This reading strikes us as unduly constricted. In any event, we confess that the difference between counsel who leaves the courtroom and counsel who effectively shuts the courtroom door to a client continues to elude us. As far as the Sixth Amendment is concerned, this is a distinction without a difference. A distinction without a difference does not a new rule make.

Respondent points· to two decisions of this court, decided after *Penson* but before *Castellanos,* that reached conclusions contrary to our holding in *Castellanos.* In *Van Russell v. United States,* 976 F.2d 323 (7th Cir.1992), *cert. denied,* 508 U.S. 923, 113 S.Ct. 2376, 124 L.Ed.2d 280 (1993), and *Belford v. United States,* 975 F.2d 310 (7th Cir.1992), we applied the prejudice prong of *Strickland* to habeas petitioners' claims that counsel had forfeited their right to direct appellate re-

view of their convictions. These cases, according to respondent, belie the assertion that *Castellanos* did not announce a new rule.

We could dispose of this objection by pointing out, as does Fern, that the legal landscape in 1990 did not comprise these two 1992 opinions. But that would be too formalistic. If *Van Russell* and *Belford* reached their holdings .after considering the precedent we find so compelling today, this would be a strong indication that the rule applied in *Castellanos* was theretofore susceptible to debate among reasonable jurists. The problem for respondent is that *Van Russell* and *Belford* did not address that precedent. As we observed in *Castellanos,* "*Belford* and *Van Russell* did not cite *Penson* or the portion of *Cronic* recognizing that a lawyer's abandonment· of his client is ineffective *per se.* We doubt that the parties brought these cases to the panels' attention." 26 F.3d at 720. We therefore "disavow[ed] the language of *Belford* and *Van Russell* requiring a defendant to establish prejudice from failure to appeal." *Id. Belford* and *Van Russell* are equally unavailing today.[4]

We conclude that *Teague* does not bar us from holding that it was error for the district court to require Fern to show that he suffered prejudice as a result of counsel's failure to perfect his direct appeal.

## B.

■ We next address respondent's argument that the new habeas law prevents us from granting relief. Under 28 U.S.C. § 2254(d)(1), a federal court must deny a habeas petition with respect to any ·claim adjudicated on the merits in state court unless the state-court adjudication "resulted in

---

**3.** Although Fern's state petition for post-conviction relief was filed *pro se,* the state appellate court ultimately appointed counsel to represent him on appeal from the trial court's dismissal of the petition. *See* 180 Ill.Dec. at 655, 607 N.E.2d at 955. There are two reasons, however, why that appointment cannot overcome *Penson*'s insistence on "the assistance of an advocate in [the court's] own review of the cold record on appeal," 488 U.S. at 82, 109 S.Ct. at 351. First, the Illinois appellate court reviewed for abuse of discretion the trial court's summary dismissal of the petition as "frivolous or patently without merit." *Id.* at 656, 607 N.E.2d at 956. Second, Fern's appointed post-conviction counsel correctly argued only that petitioner should not be required to satisfy *Strickland*'s prejudice component. Counsel limited the relief sought to a

"remand[ ] for further proceedings ... [so that] counsel could be appointed and the appropriate motion to reconsider could be filed." Fern thus remained "entirely without the assistance of counsel" as to the merits of his claims.

**4.** In *Belford,* we noted that, although *Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986), established that ineffective assistance of counsel could constitute "cause" for a ·procedural default, *Carrier* is silent as to whether the prejudice component of *Strickland* also satisfies the showing of prejudice required in order to excuse a procedural default under *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct.· 2497, 53 L.Ed.2d 594 (1977). *Belford,* 975 F.2d at 314 (citing *Freeman v. Lane,* 962 F.2d 1252, 1259 n. 5 (7th Cir.1992)). The debate "as to whether 'preju-

a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." As we recently explained,

> The novelty in this portion of § 2254(d)(1) is not the "contrary to" part but the reference to "Federal law, *as determined by the Supreme Court of the United States*" (emphasis added). This extends the principle of *Teague* by limiting the source of doctrine on which a federal court may rely in addressing the application for a writ. It does not, however, purport to limit the federal courts' independent interpretive authority with respect to federal questions.

*Lindh,* 96 F.3d at 869.

■ Viewed in light of *Lindh*'s comparison between § 2254(d)(1) and *Teague,* our task becomes straightforward. On review of petitioner's state petition for post-conviction relief, the Appellate Court of Illinois squarely rejected petitioner's argument that because counsel "was ineffective both at the plea stage and for failing to move to vacate the judgment prior to taking an appeal, defendant was procedurally defaulted on appeal and that prejudice, the second prong of the *Strickland* test of ineffective assistance of counsel, need not be shown, but may be presumed." 180 Ill.Dec. at 656–57, 607 N.E.2d at 956–57. "[W]e believe," the court stated, "that defendant must demonstrate both counsel's deficient performance and prejudice in order to prevail on his claim." *Id.* at 657, 607 N.E.2d at 957. In our view, this holding was contrary to clearly established federal law "as determined by the Supreme Court of the United States." Our *Teague* analysis suffices under § 2254(d)(1) in this case, because our conclusion that *Castellanos* did not announce a new rule rests entirely upon Supreme Court precedent. *See* Section I.A., *supra.* "Section 2254(d) requires us to give state courts' opinions a respectful reading, and to listen carefully to their conclusions, but when the state court addresses a legal question, it is the law 'as

determined by the Supreme Court of the United States' that prevails." *Lindh,* 96 F.3d at 869.

## II.

Thus far, we have assumed that Fern told his attorney to file an appeal, as *Castellanos* requires. Whether or not Fern did in fact make such a request is hotly disputed by the parties. We agree with Fern that there has been no finding of fact in either the state courts or the district court below to the effect that Fern did not request an appeal. In his post-conviction petition, Fern alleged that he "immediately informed his attorney . . . to file the appropriate motion to withdraw the guilty plea." The trial court was of the view that it "need not address petitioner's . . . contention that his counsel failed to file a Motion to Withdraw the guilty pleas." The court opined that "[s]ince . . . the petitioner's guilty pleas were not produced by negotiations, . . . such a Motion was not contemplated by petitioner or his counsel." Be that as it may, the trial court's finding does not instruct on whether Fern asked his attorney to challenge the sentence within the thirty-day window provided by Rule 604. We note that Fern's attorney filed the notice of appeal on August 17, 1989—apparently within thirty days of his sentencing, which took place on July 19. Given the state of the record, however, the question of what Fern communicated to his attorney is better left to the district court. *See Castellanos,* 26 F.3d at 720. We therefore Vacate the judgment of the district court and Remand for a determination of whether or not petitioner requested that his attorney pursue a direct appeal.

dice' under *Strickland* and 'prejudice' under the cause and prejudice standard are identical," did not need to be resolved in *Belford,* for the reason that *Belford* could not meet the prejudice prong of *Strickland. Belford,* 975 F.2d at 314. Because we decide today that Fern should not be required to show prejudice in order to demon-

strate ineffective assistance of counsel, this case might have presented the occasion to address the issue that we left unresolved in *Belford.* We decline to do so, however, because the issue has not been briefed by the parties, who focused primarily on the applicability of *Strickland*'s prejudice component.