Tony **WALKER**, Petitioner,

v.

Gary McCAUGHTRY, Respondent.

No. 98–C–130.

United States District Court,
E.D. Wisconsin.

Nov. 10, 1999.

Tony Walker, pro se.

William Ganser, Asst. Atty. Gen., for Gary McCaughtry.

### DECISION AND ORDER

ADELMAN, District Judge.

Tony Walker petitioned for a writ of habeas corpus under 28 U.S.C. § 2254, challenging his conviction of second degree reckless homicide and third degree sexual assault. The petition asserted three grounds for relief: (1) deprivation of his Fourth Amendment right to a prompt judicial determination of probable cause after his warrantless arrest; (2) ineffective assistance of trial counsel regarding his guilty pleas; and (3) ineffective assistance of appellate counsel for abandoning him without the filing of a no-merit report. On May 28, 1999, I issued a Decision and Order denying Walker's petition in its entirety. Judgment was entered in the docket by the clerk of court on June 1.

On June 4, Walker moved for reconsideration of the appellate counsel issue.[1] After receipt of the motion, I indicated that I needed "a more complete record of what transpired in petitioner's state case, particularly with respect to the withdrawal of appointed appellate counsel, William J. Tyroler." I ordered respondent to file a copy of the complete record relating to Walker's conviction and ordered petitioner to file copies of any correspondence in his possession regarding Tyroler's involvement in his case.

Because the issue for reconsideration is similar to that in *State ex rel. Toliver v. McCaughtry,* 72 F.Supp.2d 960 (E.D.Wis. 1999), I am issuing this decision in tandem with the decision in that case.

1. I note for Walker's benefit that his motion for reconsideration is one of the better re-searched, written, and argued pro se motions I have seen.

### I. MOTIONS FOR RECONSIDERATION

There is no "motion for reconsideration" mentioned in the Federal Rules of Civil Procedure. There is, however, Rule 59(e). All substantive motions served within ten days of the entry of judgment are treated as based on Rule 59(e). *Britton v. Swift Transp. Co.,* 127 F.3d 616, 618 (7th Cir.1997). A "substantive" motion is one "that if granted would result in a substantive alteration in the judgment rather than just in a correction of a clerical error or in a purely procedural order such as one granting an extension of time within which to file something." *Id.* (internal quotation marks and citation omitted). Because Walker's motion for reconsideration was filed within ten days of the entry of judgment, it is properly considered as a motion brought under Rule 59(e).

A Rule 59(e) motion is not appropriately used to advance arguments or theories that could and should have been made before the district court rendered a judgment, to present evidence that was available earlier, or to attempt to correct a party's own procedural errors. *Popovits v. Circuit City Stores, Inc.,* 185 F.3d 726, 730 (7th Cir.1999); *LB Credit Corp. v. Resolution Trust Corp.,* 49 F.3d 1263, 1267 (7th Cir.1995); *Greisz v. Household Bank (Illinois),* 8 F.Supp.2d 1031, 1045 (N.D.Ill. 1998), *aff'd,* 176 F.3d 1012 (7th Cir.1999). Instead, the only grounds for a Rule 59(e) motion are newly discovered evidence, an intervening change in the controlling law, or a "manifest error of law" by the court. *Cosgrove v. Bartolotta,* 150 F.3d 729, 732 (7th Cir.1998). The rule essentially enables a district court to correct its own errors and thus avoid unnecessary appellate procedures. *Divane v. Krull Elec. Co.,* 194 F.3d 845, 848 (7th Cir.1999).

Walker asserts that I made a manifest error of law when deciding his claim of ineffective assistance of appellate counsel

under the precept of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), rather than *Penson v. Ohio*, 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988).

## II. PROCEDURAL BACKGROUND

Walker was convicted on October 27, 1993, in Milwaukee County Circuit Court. On November 4, 1993, he filed a notice of his intent to pursue postconviction relief and requested that the State Public Defender (SPD) appoint counsel for his postconviction proceedings. The SPD did so, appointing William J. Tyroler. In December 1993, Tyroler requested copies of the court record and preparation of transcripts from circuit court staff. A March 1994 letter from Tyroler to Walker, however, indicates that while Tyroler may have assisted Walker regarding proper jail credit, he refused to help regarding a "new factor" Walker urged regarding his sentence. (*See* R. 20.)

On August 4, 1994, Judge Patricia D. McMahon granted Walker an extension of time, until September 1, 1994, within which to file a motion for postconviction relief under Wis.Stat. § 809.30, or an appeal. Judge McMahon noted that Walker proceeded pro se in requesting the extension and that Walker maintained "that his post conviction motion could not be timely filed due to a conflict between the defendant and his appointed counsel, Attorney Bill Tyrell [sic]. Mr. Tyrell [sic] is no longer defendant Walker's attorney, and the defendant still lacks representation." (R. 19 Ex. 2 Doc. 17 at 1.)

The time period for the postconviction motion, from which the time period for appeal is also determined, *see* Wis.Stat. § 809.30(2), expired without any filings by Walker attacking his conviction. Walker, proceeding pro se, instead filed a request for return of property, which was granted, and a motion for sentence credit, which was denied. In the process of deciding Walker's request for return of property, when the district and city attorneys objected to release of two pairs of shoes because they were being held as evidence, Judge McMahon wrote a letter to the attorneys in which she said she had "reviewed the file, and it appears as though the time for appeal has expired.... Such action was not taken; in fact, I have verified that the public defender handling the case determined that no postconviction relief would be pursued." (R. 19 Ex. 2 Doc. 22.)

A year after his allotted time period for filing a § 809.30 postconviction motion or appeal expired, in a letter Judge McMahon received August 29, 1995, Walker wrote that Tyroler had informed him that he was

> filing a no-merit report with the court in April of 1994, but still has not filed it. If he has filed it, I haven't received notification of it nor have I had a chance to submit a response challenging it. If Mr. Tyroler doesn't want to argue my issues, but won't file the no-merit report, how am I suppose [sic] to proceed with my appeal process? If I submit a brief while he has not filed the report, would it be processed or dismissed? What I'm really asking is may I proceed without Mr. Tyrolers assistance or do I have to wait for him to file his report?

(R. 19 Ex. 3 at unnumbered 4.) The circuit court responded by telling Walker to inquire with the court of appeals. In or around September 1995 Walker also appears to have inquired with Tyroler regarding the no-merit report. (*See* R. 20.)

On December 4, 1995 and January 2, 1996, Walker submitted a pro se postconviction motion and supporting papers. The circuit court treated the motion as one filed under Wisconsin's collateral postconviction review statute, Wis.Stat. § 974.06, which is restricted solely to questions of jurisdictional or constitutional merit. *See* Wis.Stat. § 974.06.

Walker's § 974.06 motion raised the same three claims that he pursued in this petition. Regarding the appellate counsel issue, Walker wrote that "appellate counsel refuse[d] to represent defendant in postconviction procedure," (R. 19 Ex. 2 Doc. 27 at 5), and that Tyroler "alleged that my grounds for relief lacked merit

and refuse[d] to represent me or help prepare any documents concerning postconviction relief," (*id.* at 7).

On January 17, 1996, Judge McMahon denied on the merits Walker's claims regarding the probable cause hearing and trial counsel's effectiveness, but indicated that the matter of ineffective assistance of appellate counsel had to be raised in a petition before the Wisconsin Court of Appeals under *State v. Knight,* 168 Wis.2d 509, 484 N.W.2d 540 (1992). In his brief on appeal, Walker stated in further detail that Tyroler

> informed defendant that he saw no issues of merit and that he would be filing a no-merit report. Defendant informed Mr. Tyroler that he would seek postconviction relief himself....

> Mr. Tyroler informed the court that no postconviction relief would be pursued and withdrew himself from the case without ever submitting a no-merit report as required so defendant could respond to the court contesting whether or not issues of merit did exist.

> ....

> .... Defendant did not file a timely postconviction motion because he had no assistance....

(R. 5 Ex. D at 34–35 (footnote omitted).) The Wisconsin Court of Appeals affirmed on April 15, 1997.

Walker next filed two "*Knight* petitions" in the Wisconsin Court of Appeals. His first petition was denied due to insufficient supporting factual allegations. In the second petition, Walker asserted that he had filed a notice of appeal but that Tyroler had been ineffective by withdrawing from the case without filing a no-merit report. Again, Walker attributed his failure to file anything by his deadline to the lack of assistance by Tyroler. (*See* R. 11 Ex. JJ at 2–4.) The court of appeals denied the second *Knight* petition on the merits. It made no factual findings regarding the circumstances surrounding Walker's attorney's withdrawal from the case, apparently assuming Walker's factual allegations as true for argument's sake. Instead, the court based its *ex parte* denial of the petition solely on *Strickland:*

> Walker contends that he received ineffective assistance of appellate counsel on his direct appeal because his appointed counsel withdrew from the case and failed to file a no merit report....

> Walker has not stated a claim for ineffective assistance of appellate counsel because he has not shown that counsel's actions in failing to file a no merit report could possibly have prejudiced him. A claim of ineffective assistance of appellate counsel will only lie where "there is a reasonable possibility [sic] that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The two claims Walker contends his counsel should have raised were decided by the trial court on postconviction motion brought by Walker pursuant to § 974.06, STATS. The trial court concluded that Walker was not entitled to relief based on those claims, and this court affirmed the trial court's decision. Walker has not satisfied the *Strickland* test because there is not a reasonable probability that if his counsel had filed a no merit report he would have been granted relief based on the above claims.

(R. 5 Ex. J at 1–2 (alteration in original).) Walker moved for reconsideration, specifically pointing out that the court's reliance on *Strickland* conflicted with Supreme Court precedent, including *Penson* and *United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). (*See* R. 11 Ex. KK.) The court denied Walker's motion for reconsideration on November 17, 1997, without stating any reason.

### III. APPLICABLE LAW

■ The federal habeas statutes now allow federal courts to grant habeas relief only if the state courts' denial of relief "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was

based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d); *see Schaff v. Snyder*, 190 F.3d 513, 522 (7th Cir.1999) ("We may no longer rely upon our own precedent or that of other circuit courts of appeals to grant the writ. A petitioner must have a Supreme Court case to support his claim, and that Supreme Court decision must have clearly established the relevant principle as of the time of his direct appeal.") (citation omitted).

## A. Supreme Court Precedent

■ Therefore, Walker first must show that the United States Supreme Court had clearly established the propositions essential to his appellate counsel claim as of the time of his direct appeal. *Schaff*, 190 F.3d at. 522. A rule was not clearly established unless it was compelled by existing precedent. *Id.*

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The amendment withholds from courts, "in all criminal proceedings, the power and authority to deprive an accused of his life or liberty unless he has or waives the assistance of counsel." *Johnson v. Zerbst*, 304 U.S. 458, 463, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). The right to the assistance of counsel

is one of the safeguards of the Sixth Amendment deemed necessary to insure fundamental human rights of life' and liberty.... It embodies a realistic recognition of the obvious truth that the average defendant does not have the professional legal skill to protect himself when brought before a tribunal with power to take his life or liberty, wherein the prosecution is presented by experienced and learned counsel.

*Id.* at 462–63.

■ *Johnson* recognized the right to assistance of counsel in federal criminal cases. *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), and *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), extended the same right to state criminal trial proceedings via the Fourteenth Amendment. And *Douglas v. California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), via the Fourteenth Amendment, extended the right to assistance of counsel to a criminal defendant's first appeal as of right in the state courts. *McMann v. Richardson*, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970), and *Cuyler v. Sullivan*, 446 U.S. 335, 344, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), recognized that the right to assistance of counsel at trial also means the right to *effective* assistance of counsel. *Evitts v. Lucey*, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985), extended the right to effective assistance of counsel to any first appeal of right as well.[2]

---

**2.** The United States Constitution does not require states to allow appeals as of right to criminal defendants seeking to review alleged trial court errors. *Evitts*, 469 U.S. at 400–01, 105 S.Ct. 830. But if the state has created appellate courts as an integral part of its criminal justice system, "the procedures used in deciding appeals must comport with the demands of the Due Process and Equal Protection Clauses of the Constitution." *Id.* at 393, 105 S.Ct. 830. Wisconsin's appellate courts are indeed an integral part of its criminal justice system. The Wisconsin Constitution guarantees a criminal defendant the right to a direct appeal from the conviction. Wis. Const. art. I § 21; *State ex rel. Flores v. State*, 183 Wis.2d 587, 604–05 n. 3, 516 N.W.2d 362 (1994). Therefore the Constitutional protec-

tions apply. Moreover, because a motion under Wis.Stat. § 809.30 is a prerequisite to further appellate review, such a motion is a part of the appeal process. *State v. Krysheski*, 119 Wis.2d 84, 87, 349 N.W.2d 729 (Ct.App. 1984), *overruled on other grounds by State v. McDonald*, 144 Wis.2d 531, 424 N.W.2d 411 (1988); *see D.S.A. v. Circuit Court Branch 1*, 942 F.2d 1143, 1150–51 (7th Cir.1991) (under Wisconsin law motions for new trial and technical motions dealing with the trial itself are part of appeal process, not collateral to it). Thus, because Walker's postconviction motion period was an integral part of his first appeal as of right, he had due process and equal protection rights, and therefore the right to counsel, during that period as well. *See id.*

■ The Supreme Court and other federal courts have recognized, however, that a defendant does not have the right to appointed counsel of his choice, nor does he have the right to insist that the attorney advance every argument, regardless of merit, urged by the appellant. *Evitts,* 469 U.S. at 394, 105 S.Ct. 830; *Jones v. Barnes,* 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983); *Oimen v. McCaughtry,* 130 F.3d 809, 811 (7th Cir. 1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1315, 140 L.Ed.2d 479 (1998); *see Wheat v. United States,* 486 U.S. 153, 159, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988) ("the essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers"). Nevertheless, in *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), the Court held that a criminal appellant may not be denied representation on appeal based on appointed counsel's bare assertion that he or she is of the opinion that there is no merit to the appeal. *See also Penson,* 488 U.S. at 80, 109 S.Ct. 346 (summarizing holding of *Anders*). The *Anders* Court did, however, recognize that in some circumstances counsel may withdraw without denying the indigent appellant fair representation, provided that certain safeguards are observed: (1) counsel must first conduct a "conscientious examination" of the case, (2) any motion by counsel to withdraw must be based on an opinion that the appeal is frivolous and be accompanied by a brief referring to anything in the record that might arguably support the appeal, (3) the defendant must be furnished a copy of the brief and allowed to raise any points that he chooses, and (4) the appellate court then must itself conduct a thorough examination and decide whether the appeal is wholly frivolous. *Anders,* 386 U.S. at 744, 87 S.Ct. 1396; *see Penson,* 488 U.S. at 80, 109 S.Ct. 346. If the court concludes that there are nonfrivolous issues for appeal, it must afford the indigent the assistance of counsel to argue the appeal. *Id.* at 80, 84, 109 S.Ct. 346; *Anders,* 386 U.S. at 744, 87 S.Ct. 1396.

■ A defendant may waive his or her Sixth Amendment right to assistance of counsel. *Adams v. United States ex rel. McCann,* 317 U.S. 269, 275, 63 S.Ct. 236, 87 L.Ed. 268 (1942); *Johnson,* 304 U.S. at 465, 58 S.Ct. 1019. Such waiver must be "intelligent and competent." *Faretta v. California,* 422 U.S. 806, 835, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *Johnson,* 304 U.S. at 465, 58 S.Ct. 1019. It is to be made only if the defendant "knows what he is doing and his choice is made with eyes open." *Adams,* 317 U.S. at 279, 63 S.Ct. 236 (citing *Johnson,* 304 U.S. at 468, 469, 58 S.Ct. 1019).[3] While a defendant need not himself have the skill and experience of a lawyer in order to competently and intelligently waive his right to counsel, he should be made aware of the dangers and disadvantages of self-representation before so choosing. *Faretta,* 422 U.S. at 835, 95 S.Ct. 2525.

■ Courts indulge every reasonable presumption against waiver of the fundamental right to assistance of counsel. *Johnson,* 304 U.S. at 465, 58 S.Ct. 1019.

> [W]e do not presume acquiescence in the loss of fundamental rights. A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. The determination of whether there has been an intelligent waiver of right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.

*Id.* at 464, 58 S.Ct. 1019 (internal quotation marks and footnote omitted). Whether there is a proper waiver should be clearly determined by the court, "and it would be

---

3. The standard for waiver does not differ between trial and appeal situations. *See Swenson v. Bosler,* 386 U.S. 258, 260, 87 S.Ct. 996, 18 L.Ed.2d 33 (1967) (waiver of the right to counsel on appeal must be made "knowingly and intelligently").

fitting and appropriate for that determination to appear upon the record." *Johnson*, 304 U.S. at 465, 58 S.Ct. 1019. Supreme Court precedent does not require, however, any specific court procedure—such as a court hearing—for finding waiver.[4]

■ While a claim that counsel's performance was ineffective requires a showing of prejudice before a habeas petition can be granted, *see Strickland*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, the complete denial of counsel does not, *Penson*, 488 U.S. at 88, 109 S.Ct. 346. Actual denial of the assistance of counsel altogether, whether at trial or on appeal, is legally presumed to result in prejudice and can never be treated as harmless error. *Id.* Stated another way, counsel's abandonment of a client's appeal is a per se violation of the Sixth Amendment. *United States v. Cronic*, 466 U.S. 648, 658–59, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984); *see Castellanos v. United States*, 26 F.3d 717, 718 (7th Cir.1994) (recognizing same and citing *Cronic* ). A proceeding simply is unfair if the accused is denied counsel at a critical stage. *Cronic*, 466 U.S. at 659, 104 S.Ct. 2039.

All of these Supreme Court cases were in place at the latest by 1988, when *Penson* was decided, *see Fern v. Gramley*, 99 F.3d 255, 258 (7th Cir.1996) (recognizing same), and thus by 1994 when Walker's time for postconviction and appellate proceedings expired.

### B. Standard of Review

■ Walker must show that the state court's decision rejecting his appellate counsel claim was either "contrary to" this clearly established Supreme Court case law or, alternatively, an "unreasonable application" of the same. *See Schaff*, 190 F.3d at 522. Whether a state ruling was "contrary to" Supreme Court case law is the question asked regarding purely legal determinations and is a de novo determination by this court. *Id.; Bowles*, 999 F.Supp. at 1254. "Section 2254(d) requires us to give state courts' opinions a respectful reading, and to listen carefully to their conclusions, but when the state court addresses a legal question, it is the law as determined by the Supreme Court of the United States that prevails." *Schaff*, 190 F.3d at 522 (internal quotation marks omitted).

■ Whether a state court's holding involved an unreasonable application of clearly established federal law as determined by the Supreme Court is the question asked regarding mixed questions of law and fact, which are reviewed de novo but with a grant of deference to any reasonable state court decision. *Id.; Bowles*, 999 F.Supp. at 1255. Mixed constitutional questions of law and fact are those decisions requiring application of a legal standard to historical-fact determinations. *Thompson v. Keohane*, 516 U.S. 99, 110, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995); *Bowles*, 999 F.Supp. at 1255. In regard to

---

4. In *Von Moltke v. Gillies*, 332 U.S. 708, 724, 68 S.Ct. 316, 92 L.Ed. 309 (1948), a plurality of four justices, led by Justice Black, suggested that a court faced with a possible waiver of the right to counsel should make a "penetrating and comprehensive examination of all the circumstances" surrounding the waiver of counsel, investigating the defendant's apprehension of the nature of the charges, the statutory offenses, the range of allowable punishments, possible defenses, and all other facts "essential to a broad understanding of the whole matter." No majority has adopted these as requirements, however.

State court cases such as *Flores* and *State v. Klessig*, 211 Wis.2d 194, 564 N.W.2d 716 (1997), in which the Wisconsin Supreme

Court mandated a prophylactic comprehensive colloquy in every case where a defendant seeks to proceed pro se to prove knowing and voluntary waiver of the right to counsel, cannot factor into any analysis under 28 U.S.C. § 2254(d), unless perhaps a petitioner makes an argument that the state committed a violation of due process by not following its own clearly established rules. In his submissions to this court, Walker does suggest that the Wisconsin Court of Appeals has ignored the established laws of the state as set forth in *Flores*. Because I decide this motion and Walker's petition based on his right to counsel I do not need to address this possible assertion of a due process violation, however.

mixed questions, my mere disagreement with a state court's determination cannot carry the day. *Hennon v. Cooper*, 109 F.3d 330, 334 (7th Cir.1997). "Unreasonable" means "stronger than 'erroneous' and maybe stronger than 'clearly erroneous.'" *Id., quoted in Schaff*, 190 F.3d at 523. If the state court's application of law to facts was

> at least minimally consistent with the facts and circumstances of the case, we shall uphold the state court ruling, even if it is not well reasoned or fully reasoned, or even if it is one of several equally plausible outcomes. On the other hand, if the determination is at such tension with governing U.S. Supreme Court precedents, or so inadequately supported by the record, or so arbitrary, then the writ must issue.

*Schaff*, 190 F.3d at 523 (internal quotation marks and citations omitted).

■ Pursuant to 28 U.S.C. § 2254(e)(1) state court factual findings are presumed to be correct. A petitioner has the burden to rebut the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Findings of fact to which the presumption applies are generally basic, primary, or historical facts in a recitation of events or regarding credibility of witnesses. *Thompson*, 516 U.S. at 109–10, 116 S.Ct. 457; *Cuyler*, 446 U.S. at 342, 100 S.Ct. 1708.

## IV. ANALYSIS

Walker contends that the state courts' denial of his *Knight* petition and my May 28 decision are contrary to Supreme Court precedent because they used *Strickland* rather than *Penson* to decide his appellate counsel issue. He is right.

■ As stated above, in *Cronic* the United States Supreme Court recognized that abandonment by counsel is a per se Constitutional violation. And in *Penson* the Court held that when a criminal appellant is completely denied counsel during the appellate court's decisional process, and in particular when counsel fails to file an *Anders* no-merit report, prejudice is presumed. The *Penson* Court explicitly rejected as a solution for an *Anders* violation or other complete denial of counsel a court's own review of the appellate record to see if meritorious issues exist. A court's review of the "cold record on appeal" is an inadequate safety. *Penson*, 488 U.S. at 82, 109 S.Ct. 346. Instead, *Penson* acknowledged that what *Anders* guarantees is an *advocate* for the criminal appellant, and an advocate who conducts a conscientious examination of the case. "Mere speculation that counsel would not have made a difference is no substitute for actual appellate advocacy, particularly when the court's speculation is itself unguided by the adversary process." *Penson*, 488 U.S. at 87, 109 S.Ct. 346. Moreover, said the Court, use of a prejudice requirement would render meaningless the protections of *Douglas* and *Anders* because they would never be enforced: if a state court found no merit in an appeal, the conviction would simply be affirmed; to find prejudice the state court would have to find that the conviction should be reversed, and would do so itself. *Id.* at 86, 109 S.Ct. 346.

In reaching its decision, however, the *Penson* Court distinguished the complete denial of counsel from claims of ineffectiveness arising from a failure to press a particular argument on appeal or a failure to argue an issue as effectively as possible. Respondent contends that because Walker admits his appellate attorney advised that he had discovered no meritorious issues, he was not abandoned by his attorney; he instead was given the required evaluation of his case by appointed counsel. Therefore, the argument goes, his case is like that distinguished in *Penson:* a case in which appellate counsel merely failed to press a particular argument on appeal, to which *Strickland* appropriately applies.

*Penson*, though, is directly on point. Walker contends that notwithstanding learning Tyroler's conclusion that the appeal had no merit, Tyroler abandoned him without filing a no-merit report. This is the exact scenario in *Penson* upon which

the Supreme Court found automatic prejudice. Penson, like Walker, was advised of counsel's conclusion that the case had no merit. Penson's attorney, in fact, went one step further than Walker's in that he actually filed a "Certification of Meritless Appeal," with the court of appeals and moved to withdraw, neither of which Tyroler did here. Nevertheless, the Court found the mere conclusion by counsel that an appeal is meritless—even if conveyed to the appellant—to be insufficient; a no-merit brief was mandatory. The court's review of the file did not cure the problem because it had no assistance of an advocate in reviewing the cold record on appeal. *Penson* confirmed that an advocate for the criminal appellant is guaranteed and that the process of the no-merit report has substantial value not only in confirming that the attorney has conducted a conscientious examination of the case, but in providing the best presentation of that argument on the defendant's behalf and an opportunity for the appellant to disagree with counsel's conclusion.

Respondent's argument highlights the exact circular reasoning the *Penson* Court rejected as jeopardizing *Douglas* and *Anders*—that if there is no merit in the issues the petitioner would have raised if a no-merit report had been filed the conviction can simply be affirmed, which as a corollary implies that to find prejudice the state court would have to find that the conviction should be reversed, which the court then could do so itself. *See Penson*, 488 U.S. at 86, 109 S.Ct. 346. How, then, would an *Anders* violation ever be enforced? How then would an appellant be guaranteed the advocate before the appellate court that *Anders* says he is entitled to? The *Penson* Court therefore found that prejudice cannot be required for an *Anders* violation; it must be presumed.

The record plainly indicates that Walker did not have some mere disagreement with counsel over which of several issues to present on appeal. He instead differed with counsel over whether he had any appeal at all. *Anders* came into play at that point, and if counsel failed to abide by

its strictures he completely deprived Walker of any representation during the appellate court's decisional process, just as in *Penson*.

 In his second *Knight* proceeding, Walker presented the Wisconsin Court of Appeals with *Penson* and *Cronic*, but the court of appeals rejected that law and instead believed *Strickland* applied. Walker also referenced *Penson* and *Cronic* in his briefs regarding his habeas petition but unfortunately I did not appreciate their significance. Use of *Strickland* when *Penson* applied, however, was "contrary to" clearly established Supreme Court law for purposes of Walker's federal habeas petition, *see Fern v. Gramley*, 99 F.3d 255, 260 (7th Cir.1996) (holding same), and thus a manifest error of law as well for purposes of his Rule 59(e) motion.

 Thus, if an *Anders* violation occurred, *Penson* mandates that Walker receive habeas relief in this court. But did an *Anders* violation occur? The Wisconsin Court of Appeals denied Walker's *Knight* petition based solely upon *Strickland*'s prejudice prong. It made no factual findings regarding—nor even any mention of—the circumstances surrounding Tyroler's withdrawal from the case. No state court order granted Tyroler leave to withdraw from the case or found that Walker had waived his right to counsel, either. The state courts, therefore, determined neither any mixed question of fact and law nor any facts that must be deferentially reviewed under 28 U.S.C. § 2254(d).

 While the information surrounding Tyroler's absence from Walker's postconviction proceedings and appeal is thin, it is solid enough to find that an *Anders* violation occurred. As stated above, under *Anders* Walker was Constitutionally entitled to (1) a conscientious examination of the case by his appellate attorney, (2) a motion by counsel to withdraw, based on an opinion that the appeal was frivolous and accompanied by a brief referring to anything in the record that

would arguably support the appeal, (3) a copy of the brief and opportunity to raise any points that he chose, and (4) a thorough examination of the case by the appellate court. *Anders*, 386 U.S. at 744, 87 S.Ct. 1396; *see Penson*, 488 U.S. at 80, 109 S.Ct. 346. Walker perhaps was provided the first element by Tyroler, although I cannot tell from the record how extensive Tyroler's examination of the record was because the Wisconsin courts made no factual findings on the matter. Walker clearly was denied requirements (2), (3), and (4), however. Although respondent has filed the entire record from Walker's case, that record shows no motion to withdraw, no no-merit brief, and no opportunity to respond on the record to counsel's conclusion of no merit. Indeed, Walker's case is, in fact, more egregious than Penson's; Penson's attorney had at least filed a motion to withdraw as counsel, based upon a "Certification of Meritless Appeal," allowing for a possible response from Penson and requiring the granting of the motion by the Ohio Court of Appeals. In addition, while the Wisconsin Court of Appeals may have reviewed the two issues Walker himself pressed on appeal, I see no evidence that it conducted an examination of the whole case to see if other meritorious issues, not raised by the pro se appellant, existed.

■ To this point, I have assumed the accuracy of Walker's assertion that he filed a notice of appeal and that Tyroler's error occurred in failing to file the no-merit brief or motion to withdraw. The record suggests, however, that although Walker filed a notice of intent to pursue postconviction relief, no appeal may have been filed at all. (*See, e.g.,* R. 19 Ex. 2 Doc. 22 (Judge McMahon's letter indicating time for appeal had expired without action).) Such a slight variation in Tyroler's error does not alter the outcome of this case, though. *Penson*, which confirmed that the rule of presumed prejudice in cases of actual or constructive denial of counsel applies to appellate counsel, compels the related conclusion that if a defendant tells his attorney to appeal and the lawyer fails to do so,

a per se violation of the right to counsel occurs. *See Fern*, 99 F.3d at 257–58 (recognizing same). Any court aware of *Penson*'s language "could reach no conclusion but that to apply the prejudice prong of *Strickland* to an individual [whose attorney failed to file a notice of appeal when told to do so] would be to contravene the Supreme Court's understanding of the right to effective assistance of counsel." *Fern*, 99 F.3d at 258. As far as the right to counsel is concerned, "the difference between counsel who leaves the courtroom and counsel who effectively shuts the courtroom door to a client" is nonexistent. *Id.* at 259.

■ Further, from the current, lean record regarding Tyroler's exit from postconviction and appeal proceedings, it is possible to argue that even though Walker now in hindsight says he wanted and expected Tyroler to file a no-merit report, at the time he and Tyroler had their falling-out about the case Tyroler's understanding was that Walker simply wanted to proceed pro se on appeal rather than risk dismissal upon acceptance of the no-merit report. (*See. e.g.,* R. 5 Ex. D at 34 (where Walker wrote that he had "informed Mr. Tyroler that he would seek postconviction relief himself") and the fact that it took Walker sixteen months from when he said he learned Tyroler would file a no-merit brief to check up on it.) But even if so, a Constitutional violation still occurred. If neither a no-merit report nor other motion to withdraw was filed yet Walker was proceeding pro se when requesting the September 1, 1994 extension of time, either the Milwaukee County Circuit Court or the Wisconsin Court of Appeals, under *Johnson* and its progeny, had to inquire whether Walker had validly waived his right to appellate counsel. While Walker, unlike the petitioner in *Toliver*, was not bombarding the Wisconsin Court of Appeals with requests for substitute appointed counsel, neither the appellate court nor the trial court upon Walker's motion for extension of time conducted any inquiry

into whether Walker had waived his right to assistance of counsel. Neither court, in fact, even noticed that Tyroler had failed to file any motion to withdraw, notwithstanding the fact that he was court-appointed counsel. The courts just took it for granted that Tyroler could simply terminate his representation of Walker, without even filing any motion to withdraw.

The state courts, however, had to first presume that Walker had not waived his right to assistance of counsel. *See Johnson,* 304 U.S. at 465, 58 S.Ct. 1019. They then had to find "an intentional relinquishment or abandonment of [the] known right or privilege" and confirm that Walker was making his decision to proceed pro se voluntarily, intelligently, and not in ignorance of his rights. *Id.* at 464, 58 S.Ct. 1019. As in *Toliver,* the Wisconsin Court of Appeals and circuit court failed to use *any* means to insure that Walker really wished to proceed pro se.

## V. CONCLUSION

In sum, under any of these scenarios, Walker was completely denied his Constitutional right to counsel on appeal, and under *Penson* such error causes the great writ to issue without any need to show prejudice; prejudice is presumed. The writ will be granted conditionally, however, allowing the state to reinstitute Walker's postconviction motion period or appeal and provide him appointed appellate counsel, unless he knowingly and intelligently waives the right to counsel and elects to proceed pro se. *See Romero v. Tansy,* 46 F.3d 1024, 1031 (10th Cir.1995) (if petitioner did not waive right to counsel on appeal, case must be held in abeyance for 120 days to allow state appellate court to reinstate petitioner's appeal as if it had just been filed and provide him with counsel); *Castellanos,* 26 F.3d at 720 (defendant receives right to an appellate proceeding, as if on direct appeal, with the assistance of counsel).

This resolution of Walker's motion for reconsideration and petition, however, raises the question of what to do with my May 28 decision as it relates to the other two claims Walker pursued in his petition, which I rejected. By ordering a new appeal I have essentially "unexhausted" the remainder of his claims. *See Hendricks v. Zenon,* 993 F.2d 664, 672 (9th Cir.1993) (order of new appeal for denial of right to counsel "unexhaust[s]" claims, and can "wip[e] the appellate slate clean," allowing habeas petitioner opportunity to raise constitutional issues in new appeal). While in *Hendricks* the Ninth Circuit, after finding that the petitioner was entitled to a new appeal for violation of his right to counsel, nevertheless went ahead and decided several Constitutional matters that it had "unexhausted," it did so because it saw a rare case with "exceptional circumstances of peculiar urgency." *See id.* I see no such rarity or urgency in this case and decline to collaterally estop Walker from raising these issues on his reinstated appeal. I prefer, in the interest of federalism, to allow the recommencement of Walker's postconviction proceedings and direct appeal to completely wipe clean the slate and allow the state, rather than federal, courts the initial opportunity to decide these matters.

**THEREFORE, IT IS ORDERED** that Walker's motion for reconsideration is **GRANTED.**[5]

Further, upon reconsideration of my May 28 Decision and Order on which judgment against Walker was based,

**IT IS ORDERED** that the judgment of May 28, 1999 is **VACATED** and Walker's petition for writ of habeas corpus is **GRANTED.**

**IT IS FURTHER ORDERED** that execution of the writ is **STAYED** for 120 days, and that Walker be released from custody at the end of that period unless the state reinstates his direct appeal, pro-

---

**5.** The motion is in fact granted except to the extent that Walker seeks as relief upon reconsideration withdrawal of his guilty plea, un-

conditional release from custody, and discharge from the Wisconsin prison system, or new trial. These forms of relief are **DENIED.**

1038

viding him with appointed counsel, within that time.