**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0209-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

DANIELE G.
ROMEODISANTILLO,

    Defendant-Appellant.

_____

Submitted January 29, 2024 — Decided February 7, 2024

Before Judges Mawla and Chase.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Indictment No. 15-12-2378.

The Pope and Hascup Law Group, PC (Anthony J. Pope, of counsel and on the briefs).

Bradley D. Billhimer, Ocean County Prosecutor, attorney for respondent (Samuel J. Marzarella, Chief Appellate Attorney, of counsel; William Kyle Meighan, Supervising Assistant Prosecutor, on the brief).

PER CURIAM

Defendant Daniele G. RomeoDiSantillo appeals from an August 15, 2022 order denying his petition for post-conviction relief (PCR). We affirm.

In State v. RomeoDiSantillo, No. A-4457-16 (App. Div. July 5, 2019) (slip op. at 53), we affirmed defendant's convictions on several offenses, including the first-degree murder of the victim, Peyman Sanandaji. "Defendant managed Romeo's Pizza and Pasta Factory, a restaurant located on Romeo's Plaza in Jackson. His father owned the pizza parlor and several other businesses, including Casanova's, a restaurant business closed for renovations located next door to the pizza parlor where defendant worked." Id. at 3.

Sanandaji went into business with defendant, and over the course of several months during 2014, transferred money to defendant without receiving returns from their business ventures. This caused a financial strain on Sanandaji's lifestyle and drained funds he and his girlfriend, Kadia Tavarez, relied upon to meet their needs. The situation soon came to a head between Sanandaji and defendant, which we described as follows:

> On April 7, 2015, Sanandaji sent a text message to Tavarez, which read: "In [forty-eight] hours we will be okay again," with a dollar sign. She responded "[g]ood," to which he replied: "$$Very Good$$."
>
> At 5:44 p.m. the previous day, however, defendant had sent a text message from his phone to an unidentified individual, saying: "But. He thinks. This.

Big. Payday is coming and it's not."[1] Ocean County Prosecutor's Office Detective David Brubaker reviewed defendant's cell phone data and testified that the entire text thread referred to Sanandaji.

[Id. at 7 (alterations in original).]

Two days later Sanandaji met defendant and co-defendant, Hector Calderon, at Casanova's for dinner and Calderon shot and killed Sanandaji. Based on the physical and circumstantial evidence the State gathered after the shooting, a grand jury indicted defendant and Calderon for the murder and other offenses.

Among the witnesses presented on behalf of the defense at trial was defendant's father, who testified he was unaware of any business relationship between defendant and Sanandaji, but "[h]e understood that defendant and Sanandaji were going to help Calderon with the purchase of the pizzeria." Id. at 23-24. Defendant's father also testified he owned five strip malls and had an estimated worth of $42 million. He stated Casanova's was being remodeled at the time of the incident and confirmed the workers and defendant would wear latex gloves on site, which police found following the murder. He testified Calderon entered a contract with him to buy a pizzeria in Spotswood. However,

_____

[1] For the purposes of this opinion, we will refer to defendant's text to the unknown individual as the "payday text."

3

on cross-examination he admitted he told police he was not "aware of any business relationship between [Calderon] and [defendant]" and was not "aware of any business relationship between [Sanandaji] and defendant." This testimony countered the defense's theory defendant, Calderon, and Sanandaji had a bona fide interest in purchasing two of his pizzerias.

Defendant's PCR petition argued the court should grant him a new trial. Alternatively, he sought an evidentiary hearing to address his claims of ineffective assistance of trial counsel based on evidence outside the trial record.

Relevant to this appeal, defendant claimed trial counsel's failure to prepare for trial by reviewing all the text message evidence—including the payday text—and calling defendant's father to testify, prejudiced the case. Counsel also erred by not calling defendant as a witness to explain the text messages and clarify his father's testimony. Additionally, counsel should have accepted the trial court's proposal to give the jury a limiting instruction that it should not speculate what the payday text was about.

Defendant argued trial counsel was ineffective for calling his father as a witness without preparing him to testify. He asserted his father's testimony regarding whether defendant, Sanandaji, and Calderon had business dealings was contradictory and hurt the defense. Further, trial counsel was ineffective

4

for failing to have the court instruct the jury not to draw an adverse inference regarding his decision not to testify.

Judge Guy P. Ryan heard defendant's petition and issued a detailed written opinion denying it. He found trial counsel was not ineffective for calling defendant's father because he rebutted the State's theory that defendant paid Calderon $8,000 to murder Sanandaji. Defendant's father testified he received $8,000 from Calderon in installments of $5,000 and $3,000, which Calderon told police he received from defendant as a down payment to purchase the Spotswood pizzeria. As a result, the judge noted: "Ultimately, the jury found the State did not prove the aggravating factor of paying Calderon for the murder," and "trial counsel succeeded in preventing the State from obtaining a mandatory life sentence without the possibility of parole."

Moreover, defendant's father "testified to the considerable financial resources owned by the family and defendant's future as the owner of his father's many businesses." This rebutted the State's theory that defendant needed Sanandaji's money.

The judge concluded the decision to call defendant's father was strategic and "designed to bolster certain key aspects of defendant's case-in-chief." Even if defendant's assertion regarding the father's cross-examination was correct,

5

counsel was not ineffective because the father's testimony "appears . . . to be the reason defendant has some prospect of being released on parole in his lifetime."

The judge rejected defendant's assertion trial counsel was ineffective for not reviewing the text messages, noting that trial counsel advised the court he received 15,000 text messages in discovery and performed a word search for messages involving language relevant to the case. Further, defense counsel opposed the admission of the payday text at the N.J.R.E. 104 hearing.

Indeed, the State sought to admit the payday text, which in its original form read as follows: "But he thinks this big[ ]pay day is coming and it's not[.] [T]hat's w[h]ere this mo f***er is gonna end up having to shoot himself. I ain't going back to [two] years ago koto f*** that." Defense counsel opposed the State's motion and, although he conceded he did not see these specific texts, he convinced the trial judge to omit everything except the first portion, which read: "But he thinks this big[ ]pay day is coming and it's not[.]"

Judge Ryan found trial counsel was not ineffective for stipulating to the admissibility of the payday text because

> [t]he record makes clear, after the text message was admitted, trial counsel utilized it to support his theory defendant was being pressured by [Sanandaji] to pay back the money [Sanandaji] had invested in the partnership. Yet, because the partnership agreement did not allow for such a payment, [Sanandaji] got angry

6

and started a fight before Calderon ultimately shot and killed him.

The judge concluded defense counsel's stipulation of the text into evidence "constituted trial strategy" and defendant's claim it was ineffective assistance of counsel lacked merit.

As a result, the judge also rejected defendant's argument trial counsel was ineffective for not accepting the trial judge's invitation for a limiting instruction because "such an instruction would go against the defense's theory of the case that [Sanandaji] was demanding money he was not entitled to . . . [and] would have contradicted the idea that defendant rightfully did not owe [Sanandji] money from the partnership . . . ." This too was a strategic decision by trial counsel and defendant's assertion the "decision affected the jury's interpretation of the evidence against defendant is speculative and irrelevant" to whether counsel was ineffective.

The judge rejected defendant's assertion trial counsel was ineffective for advising defendant not to testify. Defendant's certification in support of his PCR petition noted counsel conducted a mock trial and ultimately advised him not to testify. The judge also noted defendant had given police three separate statements and "would have been subject to extensive cross-examination on those statements as well as his peculiar behavior on the night of the shooting."

7

We previously detailed defendant's behavior the night of the murder. RomeoDiSantillo, slip op. at 9, 11-13, 15-21. The judge found if defendant testified and even slightly deviated from the statements he gave police, it would "cause a substantial impact on his credibility before the jury."

The judge concluded it was "abundantly clear trial counsel advised defendant on the advantages and disadvantages of testifying." Moreover, he noted the trial judge and trial counsel extensively voir dired defendant about his right to testify and he clearly declined to do so.

The judge rejected defendant's assertion counsel was ineffective for not having the court instruct the jury regarding his election not to testify. He noted the jury had been instructed during jury selection that

> [a] defendant in a criminal case has the absolute right to remain silent and has the absolute right not to testify. If a defendant chooses not to testify, the jury is prohibited from drawing any negative conclusions from that choice. The defendant is presumed innocent whether he testifies or not.

Following summations, the trial judge instructed the jury as follows: "The defendant in a criminal case has no obligation or duty to prove his or her innocence or offer any proof relating to his or her innocence."

Judge Ryan further noted "defendant's extensive statements to the police were played for the jury throughout trial and were summarized again by trial

A-0209-22

counsel during summation." Also, there was "no suggestion the State improperly commented on defendant's decision not to testify."

The judge concluded the decision not to request the instruction was "sound trial strategy" because "counsel did not wish to draw attention to defendant's decision not to testify and instead wanted the jurors to focus on defendant's recorded statements to the police which were played in their entirety at trial." Defendant's statements to police following the murder were consistent with the defense theory of the case "that Calderon shot [Sanandaji] after a disagreement arose between Calderon and [Sanandaji]."

Defendant raises the following arguments on this appeal:

> I. DEFENDANT IS ENTITLED TO A NEW TRIAL BECAUSE HIS ATTORNEY'S ERRORS THAT ARE EVIDENT IN THE RECORD ESTABLISH THAT DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN, WITH RESPECT TO A CRITICAL PIECE OF EVIDENCE, DEFENDANT'S ATTORNEY DECLINED THE TRIAL JUDGE'S OFFER TO LIMIT HOW THE JURY COULD CONSIDER THE EVIDENCE AND HE SUBSEQUENTLY FAILED TO REBUT THE PROSECUTION'S INTERPRETATION OF THE EVIDENCE AND DEFENSE COUNSEL DID NOT ENSURE THAT THE JURY WOULD RECEIVE AN INSTRUCTION RELATING TO DEFENDANT'S DECISION NOT TO TESTIFY.
>
> A. Defense Counsel's Trial Performance Was Deficient Based On His Errors That Are Clear

From Evidence In The Record Because He Failed To Rebut The Prosecution's Interpretation Of A Critical Piece Of Evidence And He Failed To Ensure That Jurors Would Be Instructed Not To Draw Negative Inferences From Defendant's Silence.

B. Defendant Suffered Substantial Prejudice As A Result Of Defense Counsel's Deficient Performance At Trial In Ways That Are Clear From Evidence In The Record Because Of Defense Counsel's Failure To Rebut A Critical Piece Of Evidence And His Failure To Insist Upon A Jury Charge Instructing Jurors Not To Draw Negative Inferences From Defendant's Silence.

II. ASSUMING[] ARGUENDO, THAT DEFENDANT HAS NOT ESTABLISHED ENTITLEMENT TO A NEW TRIAL, DEFENDANT IS ENTITLED TO A FULL EVIDENTIARY HEARING BECAUSE HIS CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL IS BASED ON EVIDENCE THAT LIES OUTSIDE OF THE RECORD SUCH AS DEFENSE COUNSEL'S ALLEGED INADEQUATE PREPARATION FOR TRIAL THAT RESULTED IN HIS FOOLISH DECISION TO CALL A WITNESS, HIS FAILURE TO PROPERLY DEAL WITH EVIDENCE PRESENTED AT TRIAL, AND HIS POOR ADVICE TO DEFENDANT REGARDING HIS RIGHT TO TESTIFY.

A. Defense Counsel's Trial Performance Was Deficient Because He Failed To Familiarize Himself With A Critical Piece Of Evidence That Had Been Provided In Discovery, He Failed To Conduct The Necessary Preparation Prior To

10

Calling A Key Witness, He Offered Faulty Advice To Defendant Regarding His Right To Testify, And He Failed To Request A Jury Instruction Relating To The Defendant's Choice To Exercise His Right To Remain Silent.

B.    Defense Counsel's Deficiencies At Trial Caused Defendant To Suffer Prejudice Because Defense Counsel's Lack Of Adequate Preparation And Poor Judgement Resulted In Testimony From A Defense Witness Who Predictably Supported The State's Theory Of The Case, The Jury Hearing Only The State's Interpretation Of The Significance Of A Key Piece Of Evidence, And Defendant Not Receiving The Benefit Of A Jury Instruction To Not Draw A Negative Inference From Defendant's Decision Not To Testify.

## I.

Ineffective assistance of counsel claims must satisfy the two-prong test set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984), and adopted by the New Jersey Supreme Court in State v. Fritz, 105 N.J. 42, 57-58 (1987).  The Strickland test requires a petitioner to show:  (1) the particular way counsel's performance was deficient; and (2) that the deficiency prejudiced their right to a fair trial.  Strickland, 466 U.S. at 687; Fritz, 105 N.J. at 58.

This is because there is a strong presumption counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  Strickland, 466 U.S. at 690.  Therefore, counsel's errors

11

"even if professionally unreasonable" will not require setting aside a judgment if they had no effect on the judgment. Id. at 691. Prejudice is not presumed, Fritz, 105 N.J. at 52, and a defendant must demonstrate "how specific errors of counsel undermined the reliability" of the proceeding. United States v. Cronic, 466 U.S. 648, 659 n.26 (1984).

Further, "complaints 'merely of matters of trial strategy' will not serve to ground a constitutional claim of inadequacy . . . ." Fritz, 105 N.J. at 54 (quoting State v. Williams, 39 N.J. 471, 489 (1963)). "[A] defense attorney's decision concerning which witnesses to call to the stand is 'an art[]' and a court's review of such a decision should be 'highly deferential.'" State v. Arthur, 184 N.J. 307, 321 (2005) (internal citation omitted) (quoting Strickland, 466 U.S. at 689, 693). The decision whether to call a witness is generally informed by the testimony expected to be elicited and the possibility of impeachment. Ibid.

A defendant is entitled to an evidentiary hearing if they present a prima facie case supporting PCR, the court determines there are material issues of fact that cannot be resolved based on the existing record, and the court finds an evidentiary hearing is required to resolve the claims presented. R. 3:22-10(b); see also State v. Porter, 216 N.J. 343, 354 (2013) (citing R. 3:22-10(b)). When

a PCR court does not hold an evidentiary hearing, our review is de novo.  State v. Harris, 181 N.J. 391, 421 (2004).

Pursuant to these principles and having conducted a de novo review of the record, we affirm substantially for the reasons expressed in Judge Ryan's thorough and well-written opinion.  We add the following comments.

Contrary to defendant's arguments on appeal, the record does not convince us defense counsel was "blindsided" by the texts and simply acquiesced to their admission.  The opposite is true.  Counsel opposed the State's motion and let in evidence he could build the defense narrative around.

Counsel's declination of the trial judge's offer to give the jury a limiting instruction also was not ineffective assistance of counsel, as the judge proposed to tell the jury to treat the texts as evidence that defendant knew he owed Sanandaji money.  This would only favor the State by compounding its narrative and dispel the defense narrative that the business venture was not making money and therefore Sanandaji was not owed money.

To the extent we have not addressed an argument raised on this appeal, it is because it lacks sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0209-22